Filed 7/18/16  Edalati v. Kaiser Found. Health Plan CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| NAZILA EDALATI,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., et al.,<br><br>        Defendants and Respondents. | A144758<br><br>(Solano County<br>Super. Ct. No. FCS044289) |

Kaiser Foundation Health Plan, Inc. (Kaiser) provides prescribed medications for Medicare and Medicaid patients of Nazila Edalati, D.D.S.  Kaiser erroneously notified some of Edalati's patients that she was on a federal list of excluded providers suspected of fraud.  Edalati sued for defamation, and Kaiser moved to dismiss, alleging its communications with the patients was protected activity within the meaning of the anti-SLAPP law[1] (Code Civ. Proc., § 425.16).[2]  The trial court held Kaiser's conduct was "in furtherance of the exercise of the . . . constitutional right of free speech in connection with a public issue or an issue of public interest" (*id.*, subd. (e)(4)), namely Medicare funding and fraud.  We reverse.

---

[1] "SLAPP" is an acronym for "strategic lawsuit against public participation." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57 & fn. 1.)

[2] Undesignated statutory references are to the Code of Civil Procedure.

## I.     BACKGROUND

In October 2014, Edalati sued Kaiser for defamation and invasion of privacy–false light.  She alleged that Kaiser sent an unsolicited letter to some of her patients falsely stating she had been excluded from participation in all federal health care programs as of October 4, 2013, and referring the patients to a website of the Office of Inspector General.  Edalati alleged that Kaiser made the statement knowing of its falsity or in reckless disregard for its truth and without undertaking an adequate investigation into its truth.

Kaiser moved to strike the complaint, arguing the alleged defamatory statements were protected activity under section 425.16.[3]  "Here, Kaiser sent out the written member-notifications at issue in connection with its responsibilities as a Medicare Part D Sponsor" pursuant to guidelines promulgated by the federal Centers for Medicare & Medicaid Services (CMS).  Specifically, CMS guidelines required Part D Sponsors to review lists of excluded providers on a monthly basis and to notify those providers' patients that federal law prohibits Kaiser from using federal funds to cover the cost of any drugs prescribed by those providers.

Kaiser acknowledged the exclusion letters were erroneous, but presented evidence the letters were sent as a result of simple negligence.  A Kaiser employee misread a

---

[3] Section 425.16 provides in relevant part:  "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim. [¶] . . . [¶] . . . [An] 'act in furtherance of a person's right of petition or free speech . . .' includes:  (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  (§ 425.16, subds. (b)(1), (e).)

similar name on the list of excluded providers and mistakenly concluded that Edalati had been excluded. Kaiser consequently sent letters informing Edalati's Medicare patients that Kaiser "[could] no longer cover prescription medications . . . that are prescribed by [Edalati] . . . because she has been excluded from participation in all federal health care programs." After Edalati complained in late December 2013, Kaiser discovered its error and sent retraction letters to the same patients in January 2014, again pursuant to CMS guidelines.

Edalati opposed the anti-SLAPP motion, arguing "a private letter to 38 patients of a dentist, speaking solely to a matter affecting only those persons, not addressed to any 'issue,' and not calling for the recipients to take action of any type, is not speech on an issue of public interest."

The court granted Kaiser's motion to strike. "The sending of the letters that misidentified [Edalati] as an excluded health care provider under the Medicare Part D program constitutes protected activity. . . in that it involved the exercise of the right of free speech in connection with a public issue or an issue of public interest. Broadly construing the statute, the court finds that the continuous dissemination of information about the eligibility of health care providers in the Medicare Part D program represents an 'ongoing discussion' about an issue of significance to the public, namely, the expenditure of Medicare funds. (See *Cross v. Cooper* (2011) 197 Cal.App.4th 357, 382–383; *Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450.) In this regard, the case is distinguishable from the case of *Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107 relied on by [Edalati]." The court also found that Edalati had not established a probability of prevailing on her claim, finding that "[t]he letters upon which [her] claims are based are privileged under Civil Code Section 47(c) as communications made, without malice, to an interested person by another interested person."[4] The court dismissed the action and

---

[4] Civil Code section 47, subdivision (c) provides a conditional privilege for communications made "without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to

3

ruled that Kaiser was entitled to recover its attorney fees pursuant to section 425.16, subdivision (c)(1).

## II.    DISCUSSION

Edalati argues the trial court erred in ruling that Kaiser's conduct was protected activity within the meaning of the anti-SLAPP statute.  She argues that unquestionably false statements of fact are not constitutionally protected, and that private correspondence to 38 individuals about their health care coverage is not a matter of public interest.  We reject the first argument but agree with the second.  Because we find no protected activity was at issue, the anti-SLAPP statute has no application and the trial court's determination that the statements were privileged need not be addressed.

A.    *Standard of Review*

"In ruling on an anti-SLAPP motion, the trial court engages in a two-step process. 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity.  The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue," as defined in the statute.  [Citation.]  If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.'  [Citations.] . . . [¶] On appeal, we review the motion de novo and independently determine whether the parties have met their respective burdens."  (*Cross v. Cooper, supra,* 197 Cal.App.4th at pp. 370–371 (*Cooper*).)

B.    *False Statements of Fact*

Edalati first asserts that "[i]t is black letter law that false statements have no constitutional protection whatsoever."  She draws this principle from cases that discuss when defamation may be punished or enjoined consistent with the First Amendment of

---

afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information."

the United States Constitution. (See *Gertz v. Robert Welch, Inc.* (1974) 418 U.S. 323, 339–340 [distinguishing statements of fact and opinion]; *Baker v. Los Angeles Herald Examiner* (1986) 42 Cal.3d 254, 260 [same]; *Sanders v. Walsh* (2013) 219 Cal.App.4th 855, 862; *Copp v. Paxton* (1996) 45 Cal.App.4th 829, 839 [same]; *Ashcroft v. Free Speech Coalition* (2002) 535 U.S. 234, 245–246 ["freedom of speech has its limits; it does not embrace certain categories of speech, including defamation"]; *Beauharnais v. Illinois* (1952) 343 U.S. 250, 266 ["[l]ibelous utterances [are not] within the area of constitutionally protected speech"].) Those cases are relevant to the *second* prong of anti-SLAPP analysis, which addresses whether a plaintiff can prevail on her claims against the defendant. They do not address the first prong of the analysis as to whether a claim *arises from* protected activity within the meaning of the anti-SLAPP statute. As an example of the distinction, an allegedly false and defamatory news article unquestionably arises from an act in furtherance of the First Amendment rights. (See *Balzaga v. Fox News Network, LLC* (2009) 173 Cal.App.4th 1325, 1336; *Carver v. Bonds* (2005) 135 Cal.App.4th 328, 342–344.) However, the publisher of such an article may still be subject to civil liability. (See, e.g., *Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 747 [false statements about private person and not about matter of public interest are actionable if defendant was at fault]; *Time, Inc. v. Hill* (1967) 385 U.S. 374, 387 [false statements about public figure are actionable if defendant acted with actual malice].) That is, even when the anti-SLAPP law applies as an initial matter, the plaintiff might nevertheless be able to prevail on the claim. (Cf. *Balzaga*, at pp. 1339–1343; *Carver*, at pp. 344–360.) Defamation claims arising from protected activity are prime examples of anti-SLAPP cases (*Hecimovich v. Encinal School Parent Teacher Organization, supra,* 203 Cal.App.4th at p. 464), but the defamation may nevertheless be actionable.

Edalati cites *Lefebvre v. Lefebvre* (2011) 199 Cal.App.4th 696 (*Lefebvre*) in support of her argument, but the case is inapposite. The defendant in *Lefebvre* had falsely accused her ex-husband of crimes to gain advantage in her divorce proceeding. The husband was charged and tried, found not guilty by a jury, and found factually innocent by the court. He then sued his ex-wife for malicious prosecution among other

5

causes of action, and the ex-wife responded with an anti-SLAPP motion. (*Id.* at pp. 700–701.) The court held the wife's conduct was not protected activity under the anti-SLAPP law even though false reports of crimes are absolutely privileged under Civil Code section 47. (See *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 355.) In our view, *Lefebvre* follows the rule of *Flatley v. Mauro*, which held that conceded or clearly established illegal behavior is not protected activity under the anti-SLAPP statute even if it otherwise arises from activity in furtherance of the constitutional rights of free speech or petition. (See *Flatley v. Mauro* (2006) 39 Cal.4th 299, 305; *Lefebvre*, at p. 704 [citing *Flatley*].) Other courts have similarly interpreted *Lefebvre*. (See *Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 966–967 ["the court in *Lefebvre* held that because the wife's report to the police was *admittedly false* and therefore illegal, it did not constitute conduct in furtherance of her constitutional rights"; citing distinguishable cases]; *Comstock v. Aber* (2012) 212 Cal.App.4th 931, 951–952 [no evidence of protected activity in *Lefebvre* because " 'the record "conclusively" established that [the] statements to the police were "illegal activity" under Penal Code section 148.5' "].)

Edalati quotes a passage from *Lefebvre* suggesting that a court assessing whether conduct is protected activity under section 425.16, subdivision (e)(4), must determine whether the particular conduct at issue was constitutionally protected.[5] To the extent *Lefebvre* can be read to suggest that the merits of a plaintiff's claim must be determined as part of the first-prong anti-SLAPP analysis, we disagree. The merits assessment clearly takes place under the second prong of the analysis except in the *rare* case, such as *Lefebvre*, where the conduct at issue is admittedly illegal. (See *Dwight R. v. Christy B.* (2013) 212 Cal.App.4th 697, 711–712.) "Illegal" for purposes of this rule means criminal, not unlawful under civil law. (*Fremont Reorganizing Corp. v. Faigin* (2011)

---

[5] "Because [defendant's] act of making a false police report was not an act in furtherance of her *constitutional* rights of petition or free speech, the anti-SLAPP statute simply never comes into play in this case. Neither the federal nor the state *constitutional* rights of petition or free speech encompass a right to file a false crime report." (*Lefebvre, supra,* 199 Cal.App.4th at p. 703.)

198 Cal.App.4th 1153, 1169 [reviewing cases]; see *Price v. Operating Engineers Local Union No. 3* (2011) 195 Cal.App.4th 962, 971 [defamation is not "illegal" within the meaning of *Flatley v. Mauro*].) In any event, Kaiser argues its conduct here was not unlawful because it was protected by the common interest privilege of Civil Code section 47, subdivision (c).

C. *Broad and Amorphous Public Interest is Insufficient*

Edalati also argues Kaiser's conduct did not qualify as protected activity because it was not connected to a matter of public interest within the meaning of the statute. Kaiser maintains its conduct was in furtherance of the public's interest in Medicare expenditures. We find Edalati's argument more persuasive.

" 'The fact that "a broad and amorphous public interest" can be connected to a specific dispute is not sufficient to meet the statutory requirements' of the anti-SLAPP statute. [Citation.] By focusing on society's general interest in the subject matter of the dispute instead of the specific speech or conduct upon which the complaint is based, [some] defendants resort to the oft-rejected, so-called 'synecdoche theory of public issue in the anti-SLAPP statute,' where '[t]he part [is considered] synonymous with the greater whole.' [Citation.] In evaluating the first prong of the anti-SLAPP statute, we must focus on 'the *specific nature of the speech* rather than the generalities that might be abstracted from it.' " (*World Financial Group, Inc. v. HBW Ins. & Financial Services, Inc.* (2009) 172 Cal.App.4th 1561, 1570 (*World Financial*).)

The defendants in *World Financial*, who were the plaintiff's direct competitors, allegedly used misappropriated trade secrets and confidential information to solicit the plaintiff's employees to come work for them. (*World Financial, supra,* 172 Cal.App.4th at pp. 1564, 1566.) The defendants contended their communications involved matters of public interest: " 'the pursuit of lawful employment pursuant to Bus. & Prof. § 16600' and 'workforce mobility and free competition.' " (*World Financial,* at p. 1572.) The appellate court was not persuaded. "Though couched in noble language, defendants' communications were not 'about' these broad topics, nor were they designed to inform the public of an issue of public interest. They were merely solicitations of a competitor's

7

employees . . . undertaken for the sole purpose of furthering a business interest. While we do not dispute that employee mobility and competition are issues of public interest and importance, 'the focus of the anti-SLAPP statute must be on the specific nature of the speech rather than on generalities that might be abstracted from it. [Citation.]' [Citation.] Otherwise, every case alleging the breach of a noncompetition agreement or the related misappropriation of trade secrets would be categorically subject to the anti-SLAPP statute. Applying the statute in this manner would effectively 'eviscerate the unfair business practices laws,' a result the Legislature plainly did not intend." (*World Financial*, at p. 1572.)

Analogously, Kaiser's communications with Edalati's patients were not "about" Medicare funding and were not designed to inform the public about the policy issue of Medicare funding. Kaiser sent the exclusion letters to its members in purported compliance with federal regulations so that it could continue to operate as a Medicare Sponsor. If this conduct were protected under the anti-SLAPP law, the statute would apply to any act of regulatory compliance by the hundreds of hospitals and tens of thousands of health care providers who care for the more than 5 million Medicare patients in this state.[6] Such sweeping application would be far removed from the Legislature's intent of encouraging participation in matters of public significance. (§ 425.16, subd. (a); see *Consumer Justice Center v. Trimedica International, Inc.* (2003) 107 Cal.App.4th 595, 601 [advertising about an herbal supplement was not speech on matter of public interest because "nearly any claim [based on federal regulation of such supplements] could be sufficiently abstracted to fall within the anti-SLAPP statute"].) We hold that Kaiser cannot bring its conduct within the coverage of the anti-SLAPP statute through such an attenuated link to a general matter of public interest.

---

[6] See Centers for Medicare & Medicaid Services, MDCR PROVIDERS 4 and 5 <https://www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/CMSProgramStatistics/2013/Providers.html> (as of July 12, 2016); *id.*, MDCR ENROLL AB 2 <https://www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/CMSProgramStatistics/2013/EnrollAB.html> (as of July 12, 2016).

8

Kaiser further argues the "existence of legislative or regulatory schemes pertaining to the underlying subject matter can be indicative of the existence of a matter of public interest." The cases it cites for this principle, however, are readily distinguishable.

In *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, the former manager of a homeowners association brought a defamation action against association members and directors based on their criticisms of his performance as manager. The controversy about the manager's performance eventually led to an unsuccessful recall election of certain directors and a vote to switch to professional management. (*Id.* at pp. 472–473.) The appellate court held that in this context—the statutorily-regulated quasi-governmental and democratic operation of a homeowners association—the statements were made in a *public forum* such that the alleged defamatory statements were protected under section 425.16, subdivision (e)(3). (*Damon*, at pp. 475–476.) Kaiser does not argue its statements were made in a public forum, and *Damon* does not assist Kaiser by analogy because the regulatory scheme was cited simply to *describe* the quasi-governmental nature of homeowners associations, not to link the challenged communications to issues of public interest. (*Id.* at p. 475.)

In *Cross*, a homeowner sued her tenants for informing (or threatening to inform) prospective homebuyers that a registered sex offender lived nearby. (*Cross, supra,* 197 Cal.App.4th at pp. 365–366.) The reviewing court held the tenants' communications were protected activity because they "involved the location of a registered sex offender, a subject specifically and directly related to an issue of compelling and widespread interest." (*Id.* at p. 379.) The court noted that the Legislature specifically required home sale contracts to advise prospective buyers of a public database showing the location of sex offenders: "This requirement reflects not only the general public interest in the dissemination of information about registered sex offenders but also the *specific public interest* in making sure that prospective . . . buyers know where to find this information . . . . [¶] Here, [the tenants'] conversation . . . was *closely and directly related to specific issues* of great interest to the general public." (*Id.* at p. 377, italics added; see *id.* at pp. 375–377 [reviewing sex offender registration statutes and Legislature's statements of

9

intent in enacting those statutes].)  In other words, the act or threatened act of informing prospective buyers of the nearby residence of a sex offender was at the core of the conduct protected and encouraged by the statute.

Kaiser also cites *Cross* and similar cases for the principle that "even statements which at first blush seem to hold importance to only a small segment of the population, and which were only communicated to a select group of people, [may be] made 'in connection with . . . an[] issue of public interest' " as required by section 425.16, subdivision (e)(4).  However, in such contexts "the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging *participation* in matters of public significance."  *Du Charme v. International Brotherhood of Electrical Workers, supra,* 110 Cal.App.4th at p. 119, fn. omitted; see, e.g., *Terry v. Davis Community Church* (2005) 131 Cal.App.4th 1534, 1539, 1547–1548 [church leaders' and members' allegations of sexually inappropriate conduct by two youth leaders were protected because the statements pertained to a matter of controversy within the church and lead to internal investigation and police report]; *Hecimovich v. Encinal School Parent Teacher Organization, supra,* 203 Cal.App.4th at pp. 455–456, 465–468 [statements by volunteers and a parent-teacher organization about a coach's disciplinary policy were protected because the policy became a matter of controversy within the afterschool program and the coach was later barred from coaching].)

Kaiser also cites a decision of this Division in which we held an insurance claims adjuster's statements about possible fraudulent conduct of a chiropractor were protected activity.  (*Hui v. Sturbaum* (2014) 222 Cal.App.4th 1109, 1112.)  The published portion of that opinion, however, did not include our analysis on that issue, and that case's facts differ starkly from this one.  The claims adjuster had obtained information about the allegedly fraudulent practices from nongovernmental investigative reports, cooperated in a separate government investigation of the chiropractor, and made the alleged actionable statements (to the chiropractor and a law firm representing the chiropractor's patients) in the context of resolving insurance claims in which they were all involved.  (*Id.* at

10

pp. 1112–1113.) In other words, there was an ongoing controversy about whether this particular chiropractor was engaging in fraud and the insurance claims representative was playing an active role in that controversy. In *Du Charme v. International Brotherhood of Electrical Workers, supra,* 110 Cal.App.4th 107, by contrast, a statement that a union officer had been removed for financial mismanagement was not related to an ongoing controversy because the officer had already been terminated and the members were not being asked to take a position on the issue. (*Id.* at p. 118.) Similarly here, there was no ongoing controversy about Edalati's fraudulent practices, and Kaiser's statements were not whistleblower-type statements about alleged or possible fraud that contributed to a debate on a matter of public interest. Instead, Kaiser's communications were connected to the broader issue of Medicare funding and fraud only because they occurred in the context of a highly-regulated industry.

As several courts have acknowledged, it can be difficult to draw lines between protected and unprotected activity in cases where the speech or conduct at issue involves only a small number of persons and occurs in a nonpublic forum. (See *Cross, supra,* 197 Cal.App.4th at pp. 372–374 [reviewing cases]; cf. *All One God Faith, Inc. v. Organic & Sustainable Industry Standards, Inc.* (2010) 183 Cal.App.4th 1186, 1200–1210 [holding trade association's "organic" labeling was not protected speech on issue of public interest]; *id.* at pp. 1219–1228 (dis. opn., of Simons, J.) [arguing the labeling was protected speech under anti-SLAPP statute].) We find Kaiser's activities here unprotected by the anti-SLAPP statute because they involve only an administrative error in the context of regulatory compliance, rather than an affirmative effort to participate in a controversy related to an issue of public interest.

Because we hold that Kaiser's conduct did not arise from protected activity, we do not reach the second prong of the anti-SLAPP analysis, which evaluates Edalati's probability of prevailing on her claims. "[Kaiser] may have a valid privilege-based defense which [it] may present in another procedural context, but such a defense may not be presented by way of an anti-SLAPP motion." (*Lefebvre, supra,* 199 Cal.App.4th at p. 705; *Flatley v. Mauro, supra,* 39 Cal.4th at p. 325 [Civ. Code, § 47 may limit a party's

11

liability, but that "does not mean [an allegedly defamatory communication] is also a protected communication for purposes of section 425.16"].)

### III.   DISPOSITION

The order granting Kaiser's anti-SLAPP motion and granting Kaiser attorney fees pursuant to section 425.16, subdivision (c)(1) are reversed.  Kaiser shall bear Edalati's costs on appeal.

_____
BRUINIERS, J.


WE CONCUR:


_____
SIMONS, Acting P. J.


_____
NEEDHAM, J.