[No. A097898. First Dist., Div. Two. July 3, 2003.]

FRANK DU CHARME, Plaintiff and Respondent, v.
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS,
LOCAL 45 et al., Defendants and Appellants.

**110**

COUNSEL

Altshuler, Berzon, Nussbaum, Rubin & Demain, Jeffrey B. Demain; Sherman, Dunn Cohen, Leifer & Yellig, Sue D. Gunter; Posner & Rosen and Michael Posner for Defendants and Appellants.

Bushnell, Caplan & Fielding and Roderick P. Bushnell for Plaintiff and Respondent

OPINION

**KLINE, P. J.—**

## INTRODUCTION

The International Brotherhood of Electrical Workers, Local 45 (Local 45), the International Brotherhood of Electrical Workers (IBEW), and Cecil Wynn (collectively, defendants), appeal from an order denying their special motion to strike Frank Du Charme's defamation claim against them. They contend the trial court erred in ruling they had not satisfied the criteria of the anti-SLAPP (strategic lawsuits against public participation) statute (Code Civ. Proc., § 425.16 (section 425.16); see *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57 [124 Cal.Rptr.2d 507, 52 P.3d 685]), and consequently failing to award them attorney fees (§ 425.16, subd. (c)).

## BACKGROUND

On August 11, 1998, Du Charme sued Local 45, the IBEW and Cecil Wynn for breach of contract and breach of the covenant of good faith and fair dealing, wrongful termination in violation of public policy (*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330]), and defamation or libel. The gravamen of his complaint was that in August of 1997, he was wrongfully terminated from his employment as assistant business manager of Local 45, and a defamatory statement about his termination was posted on Local 45's Internet Web site.

Defendants removed the action to federal district court (28 U.S.C. § 1441) on the ground that all four causes of action were preempted by section 301 of the Labor Management Relations Act (LMRA section 301; 29 U.S.C. § 185 (section 301)). Du Charme moved to remand. After a hearing, the district court denied the motion to remand, ruling that Du Charme's contract claims were preempted and therefore subject to federal question jurisdiction (28 U.S.C. § 1331), and exercising supplemental jurisdiction over his remaining

claims. Thereafter, the district court granted defendants' motion for judgment on the pleadings, finding, inter alia, that section 301 also preempted Du Charme's defamation claim. On appeal, the Ninth Circuit reversed the removal order and remanded the action to state court.

On June 14, 2001, defendants filed a special motion to strike Du Charme's defamation claim and for attorney fees and costs (§ 425.16, subds. (b) & (c)). The court granted Du Charme's motion to lift the statutory discovery stay (§ 425.16, subd. (g)) for a period of 75 days. After a hearing, the court denied the motion to strike. Defendants filed a timely notice of appeal.

## DISCUSSION

### I. THE ANTI-SLAPP STATUTE

"The goal of statutory construction is to ascertain and effectuate the intent of the Legislature. [Citation.]" (*Pacific Gas & Electric Co. v. County of Stanislaus* (1997) 16 Cal.4th 1143, 1152 [69 Cal.Rptr.2d 329, 947 P.2d 291].) Our point of departure, therefore, is section 425.16, subdivision (a), which states in pertinent part, "The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process."

Section 425.16, subdivision (b)(1) provides that a cause of action arising from an act in furtherance of a person's constitutional right of petition or free speech in connection with a public issue is subject to a special motion to strike, unless the plaintiff establishes a probability he will prevail on the claim. Protected acts include, "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).) As the statute's plain language indicates, if the statement at issue falls within the ambit of subdivision (e)(1) or (2), defendants need not separately demonstrate that it concerned an issue of public significance. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123 [81 Cal.Rptr.2d 471, 969 P.2d 564] (*Briggs*).)

Section 425.16, subdivision (b)(1) requires the trial court to engage in a two-step process when determining whether to grant a motion to strike.

First, it decides whether defendant has made a prima facie showing that the acts of which plaintiff complains were taken in furtherance of defendant's constitutional rights of petition or free speech in connection with a public issue. If defendant satisfies this threshold burden, plaintiff must then demonstrate a reasonable probability of prevailing on the merits. On appeal, we review these legal issues de novo. (*Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1364 [102 Cal.Rptr.2d 864]; *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 473–474 [102 Cal.Rptr.2d 205] (*Damon*).)

■ "In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) This requirement has been interpreted to mean that when the trial court examines plaintiff's affidavits, it must consider whether he has presented sufficient evidence to establish a prima facie case, i.e., a showing by competent and admissible evidence, of facts which, if proven at trial, would support a judgment in his favor; when it considers defendant's affidavits, the court cannot weigh them against plaintiff's, but must decide only whether they defeat plaintiff's supporting evidence as a matter of law. Defendant need not *establish* that his action is constitutionally protected; rather, he must make a prima facie showing that plaintiff's claim arises from an act taken to further defendant's rights of petition or free speech in connection with a public issue. (*Paul for Council v. Hanyecz, supra*, 85 Cal.App.4th at p. 1365; *Macias v. Hartwell* (1997) 55 Cal.App.4th 669, 675 [64 Cal.Rptr.2d 222] (*Macias*).)

■ By its terms, the anti-SLAPP statute is broadly construed. (§ 425.16, subd. (a).)

## II. The Trial Court's Ruling

Du Charme alleged that Cecil Wynn, who was assigned to operate Local 45 when it was placed in trusteeship in conjunction with an investigation into its financial operations, posted on the local's Web site the false statement that Du Charme had been "removed from office for financial mismanagement." Defendants maintained the posting constituted free speech as defined in section 425.16, subdivision (e), and Du Charme could not show he would prevail on the merits. In denying their motion, the trial court found the statement was made neither before nor in connection with a proceeding, and the issue was not one of public interest. Having determined, therefore, that defendants had not met their threshold burden, the court did not reach the issue of whether Du Charme might prevail on the merits.

### III. The Issues on Appeal

#### A. Timeliness

An anti-SLAPP motion "may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper." (§ 425.16, subd. (f).) Defendants argued below that the time during which the case was removed to federal district court should not count toward the statutory limit, and in the alternative, that the trial court should exercise its discretion to hear the otherwise late-filed motion. Du Charme argued that under *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.* (9th Cir. 1999) 190 F.3d 963, 970–973, defendants could have filed their anti-SLAPP motion in federal court. At the hearing, the trial court called Du Charme's point "fairly valid," but expressly eschewed resolution of the timeliness issue in favor of exercising its right to hear the motion under subdivision (f)'s "giant discretionary clause."

On appeal, Du Charme contends the court abused its discretion, but offers no authority for the propositions that a trial court should be required to state reasons for exercising its discretion to hear a belated anti-SLAPP motion, and that a defendant should be required to demonstrate persuasive justification for the delay.

#### B. Protected Statement

On appeal, defendants contend the statement Wynn posted on the local's Web site falls within subdivision (e)(2), (3) and (4) of section 425.16. First, they maintain it was made in connection with an issue under consideration and review by an official proceeding authorized by law (§ 425.16, subd. (e)(2)), namely the trusteeship proceeding (29 U.S.C. §§ 461–466).

The relevant facts are these: Local 45 was placed in trusteeship in April 1997 after dues collection deficiencies resulted in revenue losses, which led to an IBEW investigation and an independent audit. Thereafter, the Department of Labor (DOL) undertook a full investigation. In August, business manager James Earl Jackson was terminated for embezzlement of union funds, among other things, and eventually pleaded guilty to credit card fraud. At about the same time, Du Charme received a letter from Wynn terminating his employment as assistant business manager based on his having received unauthorized vacation and overtime pay. On August 26, 1997, the following statement was posted on Local 45's Internet Web site, over the name of Cecil Wynn, trustee: "Business Manager James Earl Jackson and Assistant Business Manager Frank Du Charme have been removed from office for financial mismanagement of the Local. [¶] I, as Trustee, am the acting Business

Manager and want to assure you that business is as usual and [w]ill continue to run smoothly. [¶] If you have any questions, please do not hesitate to contact me."

These facts do not demonstrate how Wynn's statement informing the membership, after the fact, of Du Charme's termination was made "in connection with an issue under consideration or review" by the DOL or in any trusteeship proceeding. Defendants' reliance on *Nicosia v. De Rooy* (N.D.Cal. 1999) 72 F.Supp.2d 1093 is misplaced, for there it was undisputed that the complaint arose out of acts in furtherance of the defendant's right of free speech in connection with a public issue. The only question before the court was whether the plaintiff showed he would probably prevail at trial. (*Id.* at p. 1110.) The fact that the statements at issue in *Nicosia* happen to have been published on a Web site hardly means the case stands for the proposition that *any* statement published on *any* Web site in *any* context is protected by the anti-SLAPP statute, much less that it comes within section 425.16 subdivision (e)(2). As the trial court suggested, the purpose of subdivision (e)(1) and (2) is essentially to protect the activity of petitioning the government for redress of grievances and petition-related statements and writings (*Briggs, supra*, 19 Cal.4th at pp. 1120–1121). Contrary to defendants' assertion, the *Briggs* court found all the statements at issue in that case constituted petition-related activity. (*Id.* at pp. 1114–1115.)

Next, defendants contend Wynn's Internet posting constitutes a statement made in a public forum in connection with an issue of public interest, as well as conduct in furtherance of the exercise of his right to free speech in connection with a public issue or an issue of public interest (§ 425.16, subd. (e)(3) & (4)). Du Charme responds that the trial court correctly determined his termination was not an issue of public interest.

Defendants' argument is based primarily on "the protection federal labor laws afford to speech concerning labor disputes." In *Linn v. United Plant Guard Workers of America, Local 114* (1966) 383 U.S. 53, 55 [15 L.Ed.2d 582, 86 S.Ct. 657] (*Linn*), the Supreme Court held "that where either party to a labor dispute circulates false and defamatory statements during a union organizing campaign, the court [has] jurisdiction to apply state remedies [only] if the complainant pleads and proves that the statements were made with malice and injured him." The *Linn* court adopted the "actual malice" standard enunciated in *New York Times Co. v. Sullivan* (1964) 376 U.S. 254, 279–280 [11 L.Ed.2d 686, 84 S.Ct. 710] (*New York Times*), i.e., knowledge of the falsity, or reckless disregard of the truth or falsity of the defamatory statement. (*Linn, supra*, 383 U.S. at p. 65.)

In *Old Dominion Branch No. 496, Nat. Ass'n. of Letter Carriers, AFL-CIO v. Austin* (1974) 418 U.S. 264 [41 L.Ed.2d 745, 94 S.Ct. 2770] (*Austin*),

the court considered a defamation action by nonunion members based on statements made in a union newsletter during a continuing organizational drive. (*Id.* at pp. 266–268.) The court found there was a "labor dispute" within the meaning of *Linn*, even though "there was no dispute between labor and management … and … the union's organizing efforts were neither during the course of a representation election campaign nor directed toward achieving recognition." (*Id.* at pp. 278–279.)

In *Sullivan v. Conway* (7th Cir. 1998) 157 F.3d 1092, the court relied on *Austin* and *Linn* in a case that is factually similar to the one before us. Soon after a union local hired Sullivan as a business agent, it was placed in trusteeship and Sullivan was fired. (*Id.* at p. 1096.) In four written announcements to the local's membership, the trustee stated that Sullivan and three other business agents had been fired and the local had been placed in trusteeship because of a variety of problems, including corruption. (*Id.* at p. 1098.) Sullivan sued for defamation. (*Id.* at p. 1094.) In addition to a state law privilege (*ibid.*), the court found the trustee "had a federal privilege to express his opinion of Sullivan in his communications on matters of union business to union officers and members. Federal labor law preempts state defamation law when applied in ways that interfere with the internal management of unions." (*Id.* at p. 1099.)

While these cases might support a preemption defense against the merits of Du Charme's defamation claim, defendants do not explain how the limited protection they provide for defamatory "labor speech" justifies the conclusion that such statements necessarily concern an issue of public interest within the meaning of California's anti-SLAPP statute. Perhaps in tacit recognition of that fact, defendants turn to California cases construing section 425.16's "public issue" requirement.

"The definition of 'public interest' within the meaning of the anti-SLAPP statute has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity. [Citations.]" (*Damon, supra*, 85 Cal.App.4th at p. 479, citing *Macias, supra*, 55 Cal.App.4th at p. 674; and *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 650–651 [49 Cal.Rptr.2d 620] (*Wollersheim*).) "Although matters of public interest include legislative and governmental activities, they may also include activities that involve private persons and entities, especially when a large, powerful organization may impact the lives of many individuals." (*Wollersheim, supra*, 42 Cal.App.4th at p. 650 [citing product liability suits, and real estate or investment scams as examples]; also quoted in *Macias, supra*, 55 Cal.App.4th at p. 674 and *Damon, supra*, 85 Cal.App.4th at p. 479.)

In *Damon*, for example, allegedly defamatory statements about the manager of a homeowners association governing 3,000 individuals in 1,633 homes were made at the association's board of directors meeting and in its newsletter. (*Damon, supra* at 85 Cal.App.4th pp. 471–473, 479.) The court found that because each of the statements concerned "the manner in which a large residential community would be governed," they concerned issues of public interest under section 425.16, subdivision (e)(3). (*Damon* at pp. 474–475.) Defendants assert that Wynn's statement about the termination of Du Charme's employment as Local 45's assistant business manager similarly concerned the manner in which a large organization, the local, would be governed, "an inherently political question of vital importance to each individual and to the community as a whole" (*id.* at p. 479). But the cases are distinguishable. In *Damon*, "each of the alleged defamatory statements concerned (1) the decision whether to continue to be self-governed or to switch to a professional management company; and/or (2) Damon's competency to manage the Association. These statements pertained to issues of public interest within the Ocean Hills community." (*Ibid.*) "Moreover, the statements were made in connection with the Board elections and recall campaigns." (*Ibid.*) In other words, they were made in the context of a public debate about how the community would be governed in the future. (See *id.* at pp. 471–473.) Indeed, "[b]y the end of 1997, the senior citizen residents of Ocean Hills were largely split into two camps: those who favored Damon's continued service and those who wanted Damon terminated as general manager." (*Id.* at p. 472.) The allegedly defamatory statements of those in the second group are the very type of speech the Legislature sought to protect in order "to encourage continued participation in matters of public significance" (§ 425.16, subd. (a)). By contrast, Wynn was not participating in any IBEW- or Local 45-wide discussion of Du Charme's qualifications to continue as assistant business manager. He was simply informing the local's members of Du Charme's termination.

In *Macias, supra*, 55 Cal.App.4th 669, the defamation action arose out of a political flyer distributed to union members in the course of a campaign to elect its officers. (*Id.* at pp. 671–672.) "[T]he court found that campaign statements made during a union election constituted a 'public' issue because the statements affected 10,000 union members and concerned a fundamental political matter—the qualifications of a candidate to run for office." (*Damon, supra*, 85 Cal.App.4th at p. 479, citing *Macias, supra*, 55 Cal.App.4th at pp. 673–674 ["*The public issue was a union election* affecting 10,000 members and [plaintiff/appellant]'s qualifications to serve as president." (Italics added.)].) Contrary to defendants' assertion, the *Macias* court relied on 29 United States Code section 411(a)(2) ("Every member of any labor organization shall have the right … to express any views, arguments, or opinions ….") to hold *not* that the candidate's statements "addressed public

issues," but rather that they constituted constitutionally protected speech. (*Macias,* at p. 673.) The trial court here found *Macias* distinguishable because the statements therein were made in the context of a union election. Defendants' contention that the *Macias* court did not so limit its decision is fatally undermined by the above italicized language. They have once again conflated the court's rulings on the "free speech" and "public issues" requirements of the anti-SLAPP statute. It is in regard to the former, not the latter, that the *Macias* court cites *Warren v. Herndon* (1981) 115 Cal.App.3d 141, 146–147 [171 Cal.Rptr. 220], wherein the court held under *Linn* and *Austin,* that the *New York Times* standard of constitutional malice applies to labor speech protected by 29 United States Code section 411(a)(2). (*Macias, supra,* 55 Cal.App.4th at p. 673.)

After the close of briefing in this case, we issued our opinion in *Rivero v. American Federation of State, County, and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913 [130 Cal.Rptr.2d 81] (*Rivero*), in which we affirmed the denial of an anti-SLAPP motion, after surveying the authority on the public issue requirement. We held a union's allegedly defamatory statements were not made in connection with a public issue or an issue of public interest because they concerned the supervision of a staff of eight by an individual who had previously received no public attention or media coverage, and the only people directly involved in and affected by the situation were the supervisor and his eight supervisees. (*Id.* at p. 924.) We noted that mere publication (in a newsletter, for example, or on a Web site) should not turn otherwise private information (e.g., job termination) into a matter of public interest. (*Id.* at p. 926.) We also reiterated a commentator's observation that judges and attorneys will, or should, know a public concern when they see it. (*Id.* at p. 929, quoting *Briggs, supra,* 19 Cal.4th at p. 1122, fn. 9.)

This is true in the majority of cases, which involve statements made in connection with a topic, person or entity of *widespread* public interest. For example, "The development of [a] mall, with potential environmental effects such as increased traffic and impact[] on natural drainage, [is] clearly a matter of public interest." (*Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 15 [43 Cal.Rptr.2d 350]; see also *Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226 [83 Cal.Rptr.2d 677] [domestic violence]; *Wollersheim, supra,* 42 Cal.App.4th 628 [religious institution with extensive media coverage, membership and assets]; *Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798 [119 Cal.Rptr.2d 108] [television show that generated considerable media debate]; *M.G. v. Time Warner, Inc.* (2001) 89 Cal.App.4th 623 [107 Cal.Rptr.2d 504] [child molestation in youth sports].) These are cases in which "private conduct ... impacts a broad segment of society ...." (*Damon, supra,* 85 Cal.App.4th at p. 479.)

But *Damon* and *Macias* fall into a smaller group of cases in which First Amendment activity is connected to an issue of interest to only a limited but definable *portion* of the public, a *narrow* segment of society consisting of the members of a private group or organization—a 3,000-member homeowners association in the former, a 10,000-member union local in the latter. These are cases in which private conduct "affects a *community* [in the broad sense of the word] in a manner similar to that of a governmental entity" (*Damon, supra,* 85 Cal.App.4th at p. 479, italics added). As previously noted, the allegedly defamatory statements in both cases were made not only in connection with an issue of interest to the members of the particular community, but also in the context of an ongoing controversy, debate or discussion within that community—a decision about future association governance in the former, an election of officers in the latter. The statements in *Macias* were designed to persuade union members to vote against a particular candidate for union office. In *Damon,* the statements were calculated to persuade members of the homeowners association to change its method of governance. Thus protection of the statements at issue in *Damon* and *Macias* serves the anti-SLAPP statute's purpose of encouraging *participation* in an ongoing controversy, debate or discussion.[1]

By contrast, in this case, the Local's trustee posted on its Web site the information that Du Charme had been removed from office for financial mismanagement, a statement that was presumably of interest to the membership (else why post it at all?), but unconnected to any discussion, debate or controversy. Du Charme's termination was a fait accompli; its propriety was no longer at issue. Members of the local were not being urged to take any position on the matter. In fact, *no* action on their part was called for or contemplated. To grant protection to mere informational statements, in this context, would in no way further the statute's purpose of encouraging *participation* in matters of public significance (§ 425.16, subd. (a)).

---

[1] The case of *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400 [103 Cal.Rptr.2d 174] (*Dowling*) is somewhat anomalous. There, the attorney for one party to a property dispute wrote an allegedly defamatory letter to a townhouse owners association (TOA). (*Id.* at pp. 1407–1408.) The court held the letter came within subdivision (e)(2) of section 425.16 (see *ante,* p. 111), which does not require a public issue/interest showing (*Briggs, supra,* 19 Cal.4th at p. 1123), because it was written in connection with a pending unlawful detainer action. (*Dowling, supra,* 85 Cal.App.4th at p. 1420.) Because the attorney wrote with the express purpose of advising the TOA of potential nuisance and safety concerns, the court added that her letter also addressed conduct "that arguably involved public issues of nuisance and safety." (*Ibid.*) The latter conclusion might be considered dicta. Moreover, while the underlying dispute *directly* involved only two couples, the attorney's letter was not *merely* informational, as its stated purpose was to "give [the TOA] the opportunity to correct and eliminate" dangerous conditions which "might very well affect" other owners and residents. (*Id.* at p. 1407.)

■ We therefore hold that in order to satisfy the public issue/issue of public interest requirement of section 425.16, subdivision (e)(3) and (4) of the anti-SLAPP statute, in cases where the issue is not of interest to the public at large, but rather to a limited, but definable portion of the public (a private group, organization, or community), the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging *participation* in matters of public significance.[2] Because the allegedly defamatory statement in this case was not made in such a context, it is not entitled to the statute's protection. We therefore need not determine what limitations there might be on the size and/or nature of a particular group, organization, or community, in order for it to come within the rule we enunciate today.

■ To summarize, the statement trustee Wynn posted on Local 45's Web site does not satisfy the criterion of section 425.16, subdivision (e)(2) because it was not made in connection with an issue under consideration and review by an official proceeding authorized by law. It satisfies neither subdivision (e)(3) nor (4) because, although it may well have been made in a public forum (the Internet) and in furtherance of the exercise of the constitutional right of free speech, defendants have not made a prima facie showing that it was made in connection with a public issue or an issue of public interest within the meaning of the anti-SLAPP statute.

The trial court, therefore, properly denied defendants' motion to strike Du Charme's defamation claim on the ground that Wynn's Web site posting did not satisfy any of the criteria in section 425.16, subdivision (e). It is therefore unnecessary for us, as it was for the trial court, to determine the likelihood that Du Charme would prevail on the merits.

### DISPOSITION

The judgment is affirmed.

Lambden, J., and Ruvolo, J., concurred.

---

[2] This rule is consistent with the holding and result in *Rivero*, because although the union there asserted that its statements were made in the context of a major labor dispute and/or organizing drive, we found no support in the record for that assertion. (*Rivero, supra,* 105 Cal.App.4th at pp. 917, fn. 4; 926, 927–928.)