Filed 8/16/17  Rogo v. Gottlieb CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MARK ROGO,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SANDRA GOTTLIEB,<br><br>    Defendant and Appellant. | B268295<br><br>(Los Angeles County<br> Super. Ct. No. SC123349) |

APPEAL from an order of the Superior Court for Los Angeles County, Gerald Rosenberg, Judge.  Affirmed.

Winget Spadafora & Schwartzberg, Brandon S. Reif and Richard P. Tricker for Defendant and Appellant.

Eisner Jaffe, James H. Turken and Christopher Kadish for Plaintiff and Respondent.

Defendant Sandra Gottlieb appeals from the denial of her special motion to strike under Code of Civil Procedure[1] section 425.16, the so-called anti-SLAPP statute. The trial court denied the motion on the ground that Gottlieb failed to establish that the defamation cause of action alleged by plaintiff Mark Rogo arose from conduct protected under section 425.16. Although we conclude the trial court erred in finding the conduct was not protected under the statute, we nevertheless affirm the order denying the motion because Rogo met his burden to present evidence that would support a judgment in his favor if credited by the trier of fact at trial.

## BACKGROUND

Rogo is a resident of, and claims an ownership interest in, a condominium unit (unit 2301) at Blair House, located along the Wilshire Corridor in Los Angeles. Blair House is governed by the Blair House Homeowners Association (the Association), which in turn is governed by an elected board of directors (the Board). Under the bylaws and CC&Rs of the Association, every person or entity who holds an ownership interest in a unit (except those who hold such an interest merely as security for the performance of an obligation) is a member of the Association for as long as the person or entity holds an interest in the unit. The bylaws and CC&Rs also provide that "[n]o person may exercise the rights of membership until satisfactory proof has been furnished to the Board that he or she is a Member. Such proof may consist of a duly executed and acknowledged grant deed or a title insurance policy showing the person owns a Unit in the Project." Finally, the bylaws provide that members of the Board must be members of the

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

Association, and that the Board may declare vacant the offices of a director who fails to meet this qualification at any time during his or her term.

For approximately six years prior to October 2014, Rogo was a member of the Board of the Association. For five of those years, Rogo was the president of the Board. In or around late September 2014, a question arose regarding whether Rogo held an ownership interest in unit 2301, and therefore whether he met the qualifications to serve on the Board.

According to recorded deeds for the property, in May 2007, unit 2301 was quitclaimed by the Marvin and Florene Mirisch Trust dated February 25, 1987 to Rogo's wife, Lynn Mirisch Rogo (Lynn), as trustee of The Rogo Family Trust dated April 1, 1999 (the Rogo Trust). In January 2014, three quitclaim deeds were recorded with respect to unit 2301. First, Rogo recorded a quitclaim deed that "remise[d], release[d] and forever quitclaim[ed]" the unit to Lynn, "a married woman as her sole and separate property." That same day, Lynn, as trustee of the Rogo Trust, recorded a quitclaim deed that transferred any interest in the unit to Lynn as her sole and separate property. The next day, Lynn recorded a quitclaim deed that transferred her interest to herself as trustee of the Rogo Trust. According to Rogo, these transfers were done for tax and estate planning purposes, and both he and his wife believe that he has a significant ownership interest due to their investment of more than $600,000 of community property funds into the unit.

On October 2, 2014, the Board voted to remove Rogo as president and declared his seat on the Board vacant on the ground that he was not a record owner of unit 2301 and was unable to provide the Board with proof of his ownership. Gottlieb, an attorney whose law firm had been retained by the Board after the issue regarding whether Rogo met the qualifications to sit on the Board arose, advised Rogo's attorney of the Board's action. A week later, three more quitclaim deeds were recorded with respect to unit 2301. First, Lynn, as trustee of the Rogo Trust,

3

quitclaimed an undivided 25 percent interest to herself as her sole and separate property. Next, Lynn, in her individual capacity, quitclaimed an undivided 25 percent interest in the property to Rogo and Lynn, husband and wife, as community property. Finally, Rogo and Lynn, husband and wife, as community property, quitclaimed their 25 percent interest to Rogo and Lynn as trustees of the Rogo Trust. That same day, Rogo's attorney wrote to Gottlieb, providing her with copies of the recorded deeds and requesting that Rogo be reinstated to the Board. The next day, October 10, 2014, Gottlieb responded to the attorney, telling him that the Board would not reinstate Rogo, but suggesting that Rogo was free to run for the Board in the next election if he believed the newly recorded deeds established his ownership interest.

On October 16, 2014, Gottlieb sent a letter to all homeowner members of the Association. She explained that her law firm had been retained by the Board to determine whether a Board member who did not have a recorded interest in the unit his family occupied could remain on the Board. She stated that the bylaws and CC&Rs "clearly state that someone must have a recorded title interest in a unit to be on the Board." She informed the homeowners that she obtained a copy of the grant deed for the unit in question, confirmed that the Board member (whom she did not identify by name or unit number) was not on the title, and advised the Board that the Board member should be removed immediately. She then stated the following: "Although he had been aware of the fact that he was not a record owner of the unit for his entire time on the Board, the Board member, through his attorney, gave no indication that he would modify the deed so as to conform to the By-Laws. After five days, upon my advice, the Board voted to vacate his seat. [¶] After a vote was taken, the Board member and his attorney were advised that his seat was vacated. As the composition of the Board changed, he never disclosed to his fellow Board members that he was not the record owner of the unit and

4

therefore had no authority to remain on the Board. [¶] Several days later, the former Board member did obtain an interest in the unit and through his attorney he requested to be reinstated as a Board member. The Board declined to take such action. The former Board member's unilateral actions have potentially exposed the Association as well as its current and prior Board members to harm and have caused the Association to pay for ongoing legal expenses. For years, the former Board member sat on the Board voting for Board decisions while allowing other Board members to believe that he had the authority to do so. Since this situation potentially exposes the Association to liability, the Board had no choice but to take action to limit further liability." She concluded her letter by informing the homeowners that the Board will be reviewing decisions the Board made while the former Board member sat on the Board, and will affirm and approve those decisions as necessary, and that the Board will consist of the remaining four members until the next annual meeting and election of Board members.

On November 3, 2014, Rogo filed the instant lawsuit against Gottlieb and the four remaining Board members,[2] alleging claims for defamation against all defendants, as well as other claims against only the Board member defendants. Rogo's defamation claim was based upon statements in Gottlieb's letter that Rogo (1) had been aware that he lacked authority to serve on the Board; (2) never disclosed to the Board his ineligibility to hold a seat on the Board; and (3) intentionally exposed the Blair House and its Board members to potential liability. Gottlieb filed a special motion to strike the defamation claim under section 425.16, arguing that the claim was based upon statements she made concerning a matter of public interest, and that Rogo could not demonstrate a probability of prevailing because her statements were protected by the common

_____

[2]     Rogo subsequently dismissed the four Board members from the lawsuit, leaving only Gottlieb as a defendant.

5

interest privilege (Civ. Code, § 47, subd. (c)(1)) and the litigation privilege (Civ. Code, § 47, subd. (b)).

In opposing Gottlieb's motion, Rogo argued that Gottlieb's statements were not protected by section 425.16 because they were not made in connection with a legislative, executive, judicial, or other proceeding authorized by law, nor were they made in connection with an issue of public interest in the context of an ongoing controversy, dispute, or discussion. (Citing *Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107 (*Du Charme*).) Addressing his probability of prevailing, he asserted that the litigation privilege did not apply because the statements were not made in connection with any litigation that was contemplated in good faith and under serious consideration. Finally, he argued that the common interest privilege did not apply because Gottlieb's statements went beyond any legitimate necessity of information and because the statements were made with actual malice. In support of his opposition, Rogo submitted his declaration, in which he stated, among other things, that (1) before Gottlieb sent the October 16 letter, he had not made any threats of, and had not reasonably contemplated, filing a lawsuit; (2) at or around the beginning of his service on the Board, he informed the other Board members about the nature of his ownership interest in his unit, and the president at that time (Nat Gorman), along with a retired Board member (Nat Handel), determined that he met the qualifications necessary to sit on the Board and approved his position; (3) other Board members in the past and current Association members have had ownership interests similar to his without being found to be disqualified for membership; and (4) two weeks before she sent the letter to the Association members, Gottlieb assured Rogo's attorney that the Board would notify Association members of the vacant seat by noting in the next general session minutes a reference to an executive session, stating only that "The Board met in executive session and

6

declared vacant a Board member seat," and that if any Association members asked about Rogo's removal, the Board would simply respond that "The Board of Directors confirmed that Mr. Rogo was not a record owner of his unit and as such his ability to remain on the Association's Board was not possible due to certain compliance requirements set forth in the Association's governing documents." Rogo also submitted, among other evidence, copies of (1) an October 3, 2014 letter Gottlieb sent to Rogo's attorney telling him how the Board would notify Association members and how it would respond to questions about Rogo's removal; and (2) an October 9, 2014 letter from Rogo's attorney to Gottlieb that identified Gorman and Handel as the Board members who told Rogo that he was qualified to serve on the Board based upon his ownership interest.

The trial court denied Gottlieb's motion to strike, finding that she failed to establish that her October 16 letter was a protected statement. Citing *Du Charme, supra*, 110 Cal.App.4th 107, the court noted that the subject of the letter – Rogo's removal, the Board's refusal to reinstate him, and the effect of his service on the Board – was not a matter of public interest but was instead important only to a limited community of people, and the letter was not part of an on-going debate, controversy, or dispute in the community. Gottlieb timely filed a notice of appeal from the court's order denying her motion.

## DISCUSSION

A.   *Section 425.16 and Standard of Review*

Section 425.16 provides that "'[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that

7

the plaintiff will prevail on the claim.' [Citation.] It defines "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue"' to include '(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.' (§ 425.16, subd. (e).)" (*Aguilar v. Goldstein* (2012) 207 Cal.App.4th 1152, 1159.)

A court must engage in a two-step process to determine whether a defendant's special motion to strike should be granted. "'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity. [Citation.] If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.'" (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 477.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute – i.e., that arises from protected speech or petitioning *and* lacks even minimal merit – is a SLAPP, subject to be stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

We review the denial of a special motion to strike de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.) In evaluating the motion, "[w]e consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' (§ 425.16, subd. (b)(2).) However, we neither 'weigh

8

credibility [nor] compare the weight of the evidence.  Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.'  [Citation.]"  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*).)

B.      *Gottlieb Satisfied the First Prong*

On appeal, Gottlieb argues she satisfied the first prong of the anti-SLAPP analysis because her letter provided "information about the governance of the Association . . . following a vote of the Association's Board," which was a matter of public interest to the members of the Association, and thus was protected under section 425.16.  We agree.

As the appellate court observed in *Cross v. Cooper* (2011) 197 Cal.App.4th 357 (*Cross*), "[s]ection 425.16 does not define 'public interest' or 'public issue.' Those terms are inherently amorphous and thus do not lend themselves to a precise, all-encompassing definition.  [Citations.]  Some courts have noted commentary that ""'no standards are necessary because [courts and attorneys] will, or should, know a public concern when they see it.'"  [Citation.]'  [Citations.]  [¶] Nevertheless, courts have discussed how to decide whether a statement concerns a matter of public interest.  In *Nygard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027 [72 Cal.Rptr.3d 210] (*Nygard*), the court pointed out that although section 425.16 does not define "'public interest,'" it does mandate that its provisions "'be construed broadly" to safeguard "the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances."'  [Citations.]  The court explained that '[t]he directive to construe the statute broadly was added in 1997, when the Legislature amended the anti-SLAPP statute "to address recent court cases that have too narrowly construed California's anti-SLAPP suit statute."

9

[Citation.]' [Citations.] [¶] Accordingly, courts have broadly construed "'public interest'" 'to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity. [Citations.]' [Citations.]" (*Cross*, *supra*, 197 Cal.App.4th at pp. 371-372, fn. omitted.)

For example, in *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468 (*Damon*), the former manager of a homeowners association brought a defamation action against association members and members of the board of the association who had published articles and/or made public statements critical of the former manager's performance. The appellate court held that the defendants' statements concerned a matter of public interest within the homeowners' community because "they concerned the very manner in which this group of more than 3,000 individuals would be governed – an inherently political question of vital importance to each individual and to the community as a whole." (*Id.* at p. 479.) The court noted that "[a]lthough the allegedly defamatory statements were made in connection with the management of a private homeowners association, they concerned issues of critical importance to a large segment of our local population. 'For many Californians, the homeowners association functions as a second municipal government. . . .' [Citation.]" (*Ibid.*)

Similarly, in *Country Side Villas Homeowners Assn. v. Ivie* (2011) 193 Cal.App.4th 1110, the appellate court found that a homeowner's statements criticizing the homeowners association board's decision to change a policy so that certain maintenance expenses would be borne by the association rather than individual homeowners concerned a matter of public interest. The court noted that the board's decision affected all members of the association because as a result of the board's decision, all homeowners would have to share the cost of certain

10

maintenance regardless whether their homes required the maintenance in question. (*Id.* at p. 1118.)

Similar reasoning led the court in *Cabrera v. Alam* (2011) 197 Cal.App.4th 1077 to hold that statements made at a homeowners association annual meeting concerned a matter of public interest. In that case, the past president of the association (the plaintiff), who was campaigning on behalf of a slate of candidates for the board, accused a current board member (the defendant) of having mismanaged the association's finances, and the defendant, who was running for reelection to the board, responded by accusing the plaintiff of stealing money from and defrauding the association. (*Id.* at p. 1081.) The trial court denied the defendant's special motion to strike the plaintiff's defamation claim, finding that the alleged defamatory statement was not made in connection with an issue of public interest. (*Id.* at p. 1085.) The appellate court reversed, explaining that "statements made in connection with elections to the board of directors constitute a public issue in that such elections affect all members of the homeowners association and 'concern[] a fundamental political matter – the qualifications of a candidate to run for office.'" (*Id.* at p. 1089, quoting *Damon*, *supra*, 85 Cal.App.4th at p. 479.)

In the present case, Rogo argues that these homeowners association cases are inapposite because in each of those cases the statements or conduct at issue "'occur[red] in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging participation in matters of public significance,'" but there was no such ongoing controversy, dispute or discussion in this case. In making this argument Rogo, like the trial court, relies upon a rule set forth in *Du Charme*, *supra*, 110 Cal.App.4th at page 119.

11

In *Du Charme*, the trustee of a union local posted a statement on the local's Web site that the local's business manager and assistant business manager (the plaintiff) had been removed from office for financial mismanagement; the plaintiff filed defamation claims against the trustee and the local, and the defendants brought a special motion to strike those claims. In determining that the statement at issue did not concern a matter of public interest, the appellate court analyzed three cases that addressed the public interest issue where the allegedly protected conduct was connected to an issue of interest only to a limited community: *Damon*, *supra*, 85 Cal.App.4th 468; *Macias v. Hartwell* (1997) 55 Cal.App.4th 669 (involving a defamation action arising from a political flyer distributed to union members during a campaign to elect union officers); and *Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913 (involving a union's widespread distribution of documents containing allegedly false statements about a former supervisor who oversaw a staff of eight, who had been terminated well before the documents were distributed). Comparing *Damon* and *Macias*, where the courts found the statements were protected under section 425.16, and *Rivero*, where the court found the statements were not protected, the *Du Charme* court found that what distinguished the statements in *Damon* and *Macias* from those in *Rivero* was that the statements in the former were made in the context of an ongoing controversy, dispute, or discussion about the issue within the community, while there was no such controversy, dispute, or discussion in the latter. Therefore, the court concluded that the statements were protected under section 425.16 in *Damon* and *Macias* because doing so "serve[d] the anti-SLAPP statute's purpose of encouraging *participation* in an ongoing controversy, debate or discussion." (*Du Charme*, *supra*, 110 Cal.App.4th at p. 118.) The court then set forth a general rule: "to satisfy the public issue/issue of public interest requirement of section 425.16,

12

subdivision (e)(3) and (4) of the anti-SLAPP statute, in cases where the issue is not of interest to the public at large, but rather to a limited, but definable portion of the public (a private group, organization, or community), the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging *participation* in matters of public significance." (*Id.* at p. 119.)

Given the statutory mandate to construe section 425.16 broadly (§ 425.16, subd. (a)), we believe this rule is unduly narrow if applied uncritically. For example, it would offer no protection to statements made at the outset of a dispute or discussion within a community; in fact, it could serve to *discourage* members of the community from raising issues not previously raised that may prove to be of importance to the community. Uncritical application of the rule also would deny protection to statements meant to alert members of the community to problems that may arise and affect the community.

In the present case, the statements at issue not only concerned the governance of the Association and the qualifications of a member of the Board, but also alerted the members of the Association of potential liability (for which all of the members would be responsible) that allegedly could arise due to Rogo's alleged conduct, and advised the members about actions the Board had taken and would take to limit any further liability. While these issues may not have been the topic of discussion within the Association before Gottlieb's October 16 letter was distributed, they clearly were issues that would affect, and therefore be of interest, to the community. Thus, we conclude that Gottlieb satisfied her burden to show that Rogo's defamation cause of action is one arising from protected activity under section 425.16.

13

C.      *Rogo Demonstrated a Probability of Prevailing*

Having concluded that Gottlieb satisfied the first prong of the analysis, we must now address the second prong, which the trial court did not, i.e., whether Rogo demonstrated a probability of prevailing.  "To establish a probability of prevailing, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.]  For purposes of this inquiry, 'the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant [citation]; though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.' [Citation.]  In making this assessment it is 'the court's responsibility . . . to accept as true the evidence favorable to the plaintiff. . . .' [Citation.]  The plaintiff need only establish that his or her claim has 'minimal merit' [citation] to avoid being stricken as a SLAPP." (*Soukup*, *supra*, 39 Cal.4th at p. 291.)

Gottlieb contends that Rogo has no probability of prevailing because (1) the October 16 letter is subject to the common interest privilege, and Rogo cannot establish that the allegedly defamatory statements were made with malice; and (2) the October 16 letter qualifies as a pre-litigation communication, and is absolutely privileged under the litigation privilege.  We disagree.

1.      *Rogo Presented Evidence From Which a Trier of Fact Could Conclude That the Common Interest Privilege Does Not Apply*

The common interest privilege is a qualified privilege established by Civil Code section 47, subdivision (c).  Under that provision, a privileged publication or

14

broadcast is one made "[i]n a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information." (Civ. Code, § 47, subd. (c).) A defendant asserting the privilege "generally bears the initial burden of establishing that the statement in question was made on a privileged occasion, and thereafter the burden shifts to plaintiff to establish that the statement was made with malice. [Citation.] . . . "'The malice necessary to defeat a qualified privilege is 'actual malice' which is established by a showing that the publication was motivated by hatred or ill will towards the plaintiff *or* by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights [citations].""" (*Taus v. Loftus* (2007) 40 Cal.4th 683, 721.)

In the present case, Rogo conceded that members of the Association may have had an interest in learning about his vacated seat on the Board, but he argued that the privilege did not apply because "the statements by Gottlieb falsely describing Rogo as having engaged in deceitful practices went far beyond any legitimate necessity of information and were intended solely to attack his character and discredit him in the community." (Citing *National Cash Register Co. v. Salling* (1909) 173 F. 22, 26 [statement that goes beyond what the case requires and is unnecessarily defamatory will not be protected].) We need not determine whether the rule announced in *National Cash Register* applies here, because Rogo also presented evidence from which a trier of fact could conclude that Gottlieb acted with actual malice.

Rogo contended Gottlieb acted with actual malice because, among other things, she had no reasonable ground for belief in the truth of her statements

indicating that Rogo had knowingly deceived the other Board members about his ownership interest in unit 2301. In support of this contention, Rogo submitted a letter that his attorney had sent to Gottlieb before Gottlieb sent her October 16 letter, in which his attorney gave Gottlieb the names of the former Board members to whom Rogo had spoken regarding his ownership interest, and from whom Rogo had received assurances that he was qualified to sit on the Board. Rogo also stated in his declaration submitted in opposition to Gottlieb's motion that other Board members and members of the Association have held ownership interests similar to his, that these ownership issues have been informally discussed at Board meetings, and that no objections had ever been raised about those individuals' membership status.

We conclude that this evidence, if credited by the trier of fact, could support a finding that Gottlieb lacked reasonable grounds for belief in the truth of her statements regarding Rogo's alleged deception and therefore her statements were made with actual malice. Therefore, the common interest privilege would not apply.

2.    *Gottlieb Failed to Establish That the Litigation Privilege Applies*

Civil Code section 47, subdivision (b)(2) provides that a privileged publication or broadcast is one made in any judicial proceeding. "If all the elements of the privilege are satisfied, the privilege is absolute, a complete defense regardless of malice. [Citation.] [¶] 'The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.' [Citation.]" (*Laffer v. Levinson, Miller, Jacobs & Phillips* (1995) 34 Cal.App.4th 117, 122-123.) Although the language of the statute expressly applies only to

16

communications made in judicial proceedings, courts have applied the litigation privilege to a wide variety of communications between parties in advance of litigation. For the privilege to apply, however, the communication must have some relation to litigation that is contemplated in good faith and under serious consideration. (*Id.* at p. 124.) "'The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered.'" (*Ibid.*)

In this case, Gottlieb argues that her statements are protected by the litigation privilege because, before she sent the October 16 letter to the members of the Association, Rogo's attorney had written to her and "demanded" that Rogo be reinstated to his position as president of the Board. Gottlieb overstates the content of Rogo's attorney's letter. Rather than a "demand" for reinstatement, the letter merely pointed out that Rogo and his wife had recorded documents giving him an ownership interest in unit 2301, and stated that now that Rogo had a recorded interest in the property "it is [Rogo's], Lynn's and my expectation that the temporary vacancy on the Board should end and that [Rogo] will be reinstated, effective immediately." Moreover, Rogo presented a declaration in opposition to Gottlieb's special motion to strike in which he stated that although he disagreed with the Board's decision to remove him from his seat, at the time Gottlieb sent the October 16 letter, he "had not made any threats of, nor had [he] reasonably contemplated, resorting to litigation over the matter." In short, there was no evidence from which a trier of fact could conclude that the litigation privilege applied.

Accepting as true the evidence favorable to Rogo, as we must on review of a ruling on a special motion to strike, we find that Rogo has demonstrated that his complaint is legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment, and Gottlieb's evidence does not defeat

17

Rogo's claim as a matter of law.  Therefore, the trial court properly denied Gottlieb's special motion to strike Rogo's complaint.

## DISPOSITION

The order denying Gottlieb's special motion to strike is affirmed. Rogo shall recover his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

EPSTEIN, P. J.

COLLINS, J.

18