Filed 6/2/26  ALS United Greater San Diego v. The Amyotrophic Lateral Sclerosis Assn. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ALS UNITED GREATER SAN DIEGO, | D086068 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 24CU004752C) |
| THE AMYOTROPHIC LATERAL SCLEROSIS ASSOCIATION, | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of San Diego County, Gregory W. Pollack, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Barnes & Thornburg, Noah A. Katsell, Joel Meyer, C. Julian Kennedy, and Oliver C. McClymonds for Defendant and Appellant.

Quade & Associates, Michael W. Quade and Cheryl L. Gustafson for Plaintiff and Respondent.

INTRODUCTION

The ALS Association, Greater San Diego Chapter (the Chapter), used to be a local chapter of a national organization, The Amyotrophic Lateral Sclerosis Association (the Association).  Both entities support and advocate

for people suffering from amyotrophic lateral sclerosis (ALS).  After failed merger negotiations, the Chapter separated from the Association and changed its name to ALS United Greater San Diego (ALS United).  The Association then communicated with patients, donors, and healthcare providers about the separation.  ALS United sued the Association and in a 16-count complaint alleged the communications contained false and disparaging statements that caused financial loss.  The Association responded with a special motion to strike seven counts that were based on the communications, on the ground they constituted a strategic lawsuit against public participation (SLAPP).  The trial court granted the motion on two counts and denied it on five.  The Association challenges the denial portion.  We conclude the trial court should have granted the motion either entirely or partially as to all seven counts.  We therefore affirm in part, reverse in part, and remand with directions.

BACKGROUND

I.

*Parties' Relationship*

The Association and ALS United are nonprofit corporations that provide services to and advocate for people with ALS, a fatal degenerative disease of the central nervous system characterized by progressive weakness and wasting of muscles (Stedman's Medical Dict. (28th ed. 2006) p. 1733).  The Association used to operate under a federated structure of local chapters throughout the United States.  The Association funded research into the causes of and treatments for ALS; certified ALS multidisciplinary clinics; and increased awareness of ALS among policymakers, scientists, healthcare professionals, and the public.  The local chapters raised funds and ran direct-

2

care programs. The Chapter operated in San Diego County, Imperial County, and parts of Riverside County.

In July 2021, the Association decided to eliminate the federated structure and began negotiations to merge the chapters into itself. The Association and the Chapter executed a Transfer Agreement dated December 22, 2021, by which the Chapter transferred assets to the Association and the Association assumed liabilities of the Chapter and agreed to offer employment to its employees. Approximately $2.7 million was transferred from the Chapter's bank account to the Association, and a large portion of the Chapter's durable medical equipment, supplies, and donated cars was liquidated. During continued negotiations about the merger, the Chapter came to believe the promises and representations the Association had made to induce the Chapter to sign the Transfer Agreement and to part with a significant portion of its cash were false. The Chapter also repeatedly expressed concerns about how the Association was spending donations and failing to meet the Chapter's needs.

On July 9, 2023, a majority of the Chapter's board of directors voted not to merge with the Association. In the majority's view, the conditions precedent to the merger were not satisfied and the Transfer Agreement was obtained by false and fraudulent pretenses. The two entities have remained separate since then.

The Association completed its merger with other chapters in September 2023 and no longer has any chapters. The Chapter changed its name to ALS United on January 19, 2024.

II.

*Post-Separation Communications by the Association to Third Parties*

After the parties separated, the Association communicated with third parties about the separation. The communications included the following.

On February 15, 2024, the Association sent a mass e-mail to donors and constituents in the San Diego area "to clarify an unfolding situation regarding [the Association] and a new organization calling itself 'ALS United Greater San Diego.' " The e-mail stated:

> "We are disheartened and upset that some individuals are claiming to represent the Greater San Diego Chapter of the ALS Association. Rather, this is not simply a matter of the same organization with a new name, as they claim. This is a new organization entirely, with very limited resources, and consisting of only four employees, three of whom were fundraisers with just over one year's experience working for an ALS organization.

> "We are sorry to have to share this information, but we are deeply concerned about members of our community being misled that they are going to receive the same level of service and experience with this purported organization as they would with [the Association]."

The signatories claimed they had "over 60 years of cumulative experience working and volunteering for the ALS community," and assured recipients the Association remained "committed to making ALS livable for everyone until we can cure it" and would continue to provide the "consistent and high standard of service and support [it] had provided for over four decades."

The Association scheduled its annual fundraising walk for October 6, 2024, one week before ALS United's scheduled walk. In social media promotions, the Association called the October 6 walk the " '23rd Walk to Defeat ALS' " or the " '23rd Greater San Diego Walk to Defeat ALS' " and

4

included a picture of a person formerly employed by the Association but then employed by ALS United.

ALS United became aware of a May 15, 2024 e-mail exchange between Eugene Brandon (a member of the Association's board of trustees) and Ed Witt (whose family had raised funds for the Chapter in past years) about the two ALS walks scheduled for October.  Witt wrote that family members and friends were asking which walk to support in e-mails and text messages.  He continued:

> "I strongly suggest there NOT be two walks and that for the sake of being adults you settle your differences.  Who is right and who is wrong…..WHO cares?  The families and friends of those living with and fighting ALS should not be bothered by this dispute.  Both groups are hurting this community.  Getting emails and texts is really BAD."

Brandon agreed it was a "confusi[ng]" and "sad situation" and responded:

> "As I've watched this unfold, I'll reiterate that we have had our walk the same place and time for 23 years (I've been to 19 of them); it is our biggest fundraising event each year, and I can't imagine cancelling simply because another group of 4 former employees who quit to start their own ALS support effort is planning a walk at the same time.  It feels like it is on this other group to explain how they decided to have a walk and took the ALS Association's contact list and used that to publicize it?  I'm sorry if that doesn't sound adult but how does it make sense to cancel our annual walk and entrust a new group will do as good a job with a walk, or patient care for that matter?  We don't know anything about their putative org or capabilities, capacity, authenticity, integrity, etc etc… ?"

The Witt family's fundraising for ALS United that year was less than half of what it had been in prior years for the Chapter.

After separation from the Association, ALS United perceived changes in its relationships with a rehabilitation center and a clinic.  The

rehabilitation center "was conflicted on partnering with [ALS United] as the company had in the past" and "was concerned that [ALS United] was a new organization without sufficient means to operate." The clinic was also "concerned about [ALS United] being a new organization" and required negotiation of a new memorandum of understanding before the clinic would allow ALS United back on site. ALS United believed the Association's statements that ALS United was a new organization with inadequate resources caused the changes in its relationships with the rehabilitation center and the clinic.

## III.

### *Post-Separation Diversion of Online Donations*

In June 2024, employees of the Association who used to work for the Chapter accessed ALS United's account at an online donation platform without ALS United's consent. The employees requested the platform deactivate ALS United's profile because ALS United was going to "operate under the umbrella" of the Association. The platform granted the request and, as a result, donations of at least $2,000 intended for ALS United were diverted to the Association before reactivation of ALS United's profile.

## IV.

### *Litigation*

In August 2024, ALS United sued the Association for monetary and other relief based on allegedly wrongful acts the Association committed during and after the unsuccessful merger negotiations, including those previously described in parts II and III. The complaint alleged 16 counts for: (1) trade libel; (2) conversion; (3) violation of Penal Code section 502 (unauthorized access to computer systems and data); (4) violation of Civil Code section 3344 (misappropriation of name or likeness); (5) common law

6

misappropriation of name or likeness; (6) unjust enrichment; (7) intentional interference with prospective economic relations; (8) negligent interference with prospective economic relations; (9) violation of Business and Professions Code section 17200 (unfair competition); (10) intentional misrepresentation; (11) false promise; (12) concealment; (13) negligent misrepresentation; (14) breach of contract; (15) breach of the duty of good faith and fair dealing; and (16) declaratory relief.

The Association responded with a special motion to strike portions of the complaint under the anti-SLAPP statute (Code Civ. Proc.,[1] § 425.16). The motion targeted count 1 and counts 4 through 9 for "seek[ing] to punish [the] exercise of free speech in connection with a public issue or an issue of public interest" that is protected by the anti-SLAPP statute. The Association argued the counts it moved to strike concerned its attempts to raise funds from prior donors and the public during an ongoing dispute with ALS United, and the statements and advertisements on which the counts were based were designed to provide information about that dispute so that potential donors could decide which entity they would send their donations. The Association further argued ALS United could not show a reasonable probability it would prevail on any of the targeted counts, because, among other reasons, the statements on which the counts were based were nonactionable opinions. In support of the motion, the Association's attorney submitted a declaration that attached a copy of the certificate of amendment of articles of incorporation the Chapter filed with the Secretary of State on January 19, 2024, to change its name to ALS United.

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

ALS United opposed the anti-SLAPP motion in part. It agreed to dismiss counts 4 and 5, which alleged statutory and common law misappropriation of name or likeness. ALS United argued the Association had not met its burden to show counts 1, 4, 7, 8, and 9 arose from speech protected by the anti-SLAPP statute, because the speech at issue did not implicate a matter of public interest and was "purely commercial in nature." ALS United also argued it had a reasonable probability of prevailing on those counts. The opposition papers included declarations with attached exhibits from ALS United's executive director, Brandy Wiegand, and community engagement manager, Jackson Strong.

Wiegand described what she considered to be false or misleading statements about ALS United in the February 15, 2024 mass e-mail the Association sent to donors in the San Diego area, in Eugene Brandon's May 15, 2024 e-mail to Ed Witt, and in the Association's promotional materials for its October 6, 2024 walk, and how she believed those statements negatively affected donations to ALS United. Wiegand also described unauthorized access by employees of the Association to ALS United's account at the online donation platform and the diversion of donations. She described disruptions in ALS United's relationships with a rehabilitation center, a clinic, and former sponsors and related costs and lost donations, which she believed were caused by the Association's statements that ALS United was a new organization with inadequate resources. Wiegand attached to her declaration copies of: (1) material she said she found on the Association's website concerning its October 6, 2024 walk; (2) e-mails concerning the unauthorized access by employees of the Association to ALS United's account at the online donation platform; and (3) an e-mail from the fundraising team captain who

8

declined an invitation to attend an ALS United fundraising event and stated, "My allegiance will remain with the original group."

Strong described a March 7, 2025 meeting with Al Schaffer, who had led fundraising efforts for the Chapter's annual ALS walks in past years but did not participate in the walk on October 13, 2024. Strong said Schaffer's "questions clearly showed that he had an impression that [ALS United] did not have the financial resources and/or ability to provide to the ALS community as it did in prior years" and "also had the impression that donations to [ALS United] would stay/be used locally and lack of clarity how the funds from the 2023 walk were deposited and how they would be used and by whom." Strong attached copies of: (1) the mass February 15, 2024 e-mail the Association sent to donors in the San Diego area; (2) the May 15, 2024 e-mails between Eugene Brandon and Ed Witt, which Strong said Betsy Witt forwarded to him; and (3) a May 7, 2024 e-mail about the Association's October 6, 2024 walk to defeat ALS, which Strong said his roommate forwarded to him.

The Association filed a reply in which it responded to ALS United's arguments and repeated and expanded on arguments made in the initial moving papers. It also filed objections to portions of the declarations of Wiegand and Strong and to the attached exhibits. The grounds for the objections included lack of foundation (Evid. Code, § 403), lack of personal knowledge (*id.*, § 702), improper opinion (*id.*, § 800), hearsay (*id.*, § 1200), and lack of authentication (*id.*, § 1401).

The trial court held a hearing and issued a written ruling on the anti-SLAPP motion. The court overruled all the Association's evidentiary objections. It granted the motion as to counts 5 and 6 (statutory and common law misappropriation of name or likeness), which ALS United conceded

9

should be dismissed.  The court assumed that counts 1, 4, 7, 8, and 9 arose from activities protected by the anti-SLAPP statute, ruled ALS United had met its burden to show a probability of prevailing on those counts, and denied the motion as to them.

DISCUSSION

I.

*Parties' Contentions*

The Association attacks the trial court's order to the extent it denied the anti-SLAPP motion.  (See *Old Republic Construction Program Group v. The Boccardo Law Firm, Inc.* (2014) 230 Cal.App.4th 859, 866, fn. 4 [defendant may appeal order that grants anti-SLAPP motion on some counts and denies it on others].)  The Association argues it met its burden to show the anti-SLAPP statute applies to the targeted counts, because they arose from speech on an issue of public interest, namely, statements it made to the ALS community about its separation from ALS United.  It argues ALS United did not meet its burden to show a probability of prevailing on those counts, because one count does not exist as a matter of law, the others arose from opinions rather than provably false assertions of fact, and ALS United did not submit sufficient admissible evidence to support any of them.  The Association asks us to vacate the trial court's order and to direct the court to grant the anti-SLAPP motion in full.

ALS United defends the trial court's order.  It argues the commercial speech exemption to the anti-SLAPP statute applies to the statements at issue.  ALS United also argues the Association did not meet its burden to show the anti-SLAPP statute applies, because the statements underlying the targeted counts involved no issue of public interest.  It argues that even if the anti-SLAPP statute applies to those counts, it satisfied its burden to show a

10

probability of prevailing on them, because each stated a legally valid basis for relief and was supported by sufficient admissible evidence the underlying statements were provably false.  ALS United asks us to affirm the challenged order.

## II.

### *Commercial Speech Exemption*

We first address ALS United's contention the commercial speech exemption to the anti-SLAPP statute defeats the Association's motion.  A court should consider the exemption before proceeding to an analysis under the statute because speech or conduct within the scope of the exemption is not protected by it.  (*Xu v. Huang* (2021) 73 Cal.App.5th 802, 807.)  The exemption, in pertinent part, states:

> "Section 425.16 does not apply to any cause of action brought *against a person primarily engaged in the business of selling or leasing goods or services*, including, but not limited to, insurance, securities, or financial instruments, arising from any statement or conduct by that person if both of the following conditions exist:  [¶]  (1) The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services.  [¶]  (2) The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer[.]"  (§ 425.17, subd. (c), italics added.)

The commercial speech exemption " 'should be narrowly construed.' " (*Simpson Strong-Tie Co, Inc. v. Gore* (2010) 49 Cal.4th 12, 22 (*Simpson*).) ALS United, as the plaintiff, has the burden to prove the exemption applies. (*Id.* at p. 26.)

11

ALS United argues, without citation to authority, the exemption applies because "[c]haritable solicitation is a 'commercial activity' " and it "compete[s]" with the Association for employees and donations. We disagree. The exemption applies when a cause of action targeted by an anti-SLAPP motion is "against a person primarily engaged in the business of selling or leasing goods or services." (§ 425.17, subd. (c); see *Simpson, supra*, 49 Cal.4th at p. 30 [listing elements of exemption]; *All One God Faith, Inc. v. Organic & Sustainable Industry Standards, Inc.* (2010) 183 Cal.App.4th 1186, 1212 (*All One God Faith)* [commercial speech exemption did not apply to nonprofit trade association that itself sold no goods but whose members did].)

In its complaint, ALS United described the Association as a "non-profit corporation existing for charitable purposes related to ALS" whose "primary function [is] to fund research into the causes of and treatments or cures for ALS, to certify ALS multidisciplinary clinics, and to develop awareness of ALS among policymakers, scientists, healthcare professionals, and the general public." The Transfer Agreement attached to the complaint likewise described the Association as "a charity" whose "mission is to discover treatments and a cure for ALS, and to serve, advocate for, and empower people affected by ALS to live their lives to the fullest." Because the Association primarily engages in charitable activities, not in "selling or leasing goods or services," the commercial speech exemption does not apply. (§ 425.17, subd. (c); see *All One God Faith*, at pp. 1218–1219.) We thus proceed to an analysis under the anti-SLAPP statute.

III.

*Anti-SLAPP Analysis*

"The anti-SLAPP statute enables defendants to quickly terminate meritless actions against them that are based on their constitutionally protected rights to speak freely and petition for redress of grievances." (*Dziubla v. Piazza* (2020) 59 Cal.App.5th 140, 147.)  To that end, the statute provides:  "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1).)

Resolution of an anti-SLAPP motion proceeds in two steps.  First, a defendant moving to strike a claim[2] must show the claim arises from speech or conduct within one of the four categories of protected activity listed in section 425.16, subdivision (e).  (*Baral, supra*, 1 Cal.5th at pp. 384, 396.)  Second, if the defendant makes that showing, the burden shifts to the plaintiff to show the targeted claim is legally sufficient and is supported by evidence that, if credited, would suffice to sustain a judgment for the plaintiff.  (*Baral*, at pp. 384–385, 396.)  "Only a cause of action that satisfies both prongs of the anti-SLAPP statute—i.e., that arises from protected

---

[2]    In this context, "claim" is a term of art.  An anti-SLAPP motion may attack an entire count as pled or only a part of it.  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 393 (*Baral*).)  "Claim" refers to alleged acts asserted as the basis for a remedy, whether the acts constitute a whole count or just a part of it.  (*Id.* at p. 395; *Miszkewycz v. County of Placer* (2024) 99 Cal.App.5th 67, 73; *Pech v. Doniger* (2022) 75 Cal.App.5th 443, 458.)

13

speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) We review the trial court's decision on both steps de novo. (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1250 (*Geiser*); *Balla v. Hall* (2021) 59 Cal.App.5th 652, 671.)

A.    *Step one:  Arising from protected activity*

The Association has the initial burden to show the counts it moved to strike from ALS United's complaint arise from activities protected by the anti-SLAPP statute. It argues, as it did in the trial court, the statements underlying those counts fall within the protected category of "any other conduct in furtherance of the exercise of . . . the constitutional right of free speech in connection with a public issue or an issue of public interest."[3] (§ 425.16, subd. (e)(4).) Our Supreme Court has developed a two-part test for determining whether speech is within that category. First, a court identifies what, if any, issue of public concern the speech implicates. (*Geiser, supra*, 13 Cal.5th at p. 1249; *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 149 (*FilmOn*).) Second, the court considers the functional relationship between that issue and the speech, i.e., whether the speech contributes to public discussion of the issue. (*Geiser*, at p. 1249; *FilmOn*, at pp. 149–150.) The content (words used) and context (speaker, audience, location, timing, and purpose) of the speech are relevant to both parts of the test. (*Geiser*, at

---

[3]    Courts have attributed no substantive difference to the phrases "public issue" and "issue of public interest" and have used them interchangeably. (See, e.g., *Dubac v. Itkoff* (2024) 101 Cal.App.5th 540, 548 (*Dubac*); *Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 898 (*Wilbanks*); *Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107, 119 (*Du Charme*).) We do the same.

14

pp. 1252–1254; *FilmOn*, at pp. 140, 143.) As we shall explain, the Association met its burden to show each targeted count arises at least in part from speech that satisfies the two-part test.[4]

We begin by identifying the Association's speech that forms the basis for liability on the counts it moved to strike from ALS United's complaint. (*Willis v. The Walt Disney Co.* (2025) 115 Cal.App.5th 1001, 1013 (*Willis*).)

- The trade libel count is based on the Association's allegedly "false statements to potential donors [and] medical clinics that disparaged [ALS United]" and caused loss of donations and disruptions in working relationships.

- The unjust enrichment count is based in part on allegedly wrongful deprivation of "revenue/donations by way of trade libel."

- The counts for intentional and negligent interference with prospective economic relations are based on "false statements made about [ALS United] to donors and others" that disrupted relationships with those donors and others.

- The unfair competition count is based in part on the counts for trade libel and interference with prospective economic relations, which ALS United alleged constitute unfair business practices.

All those counts incorporate, and so are at least partially based on, the prior allegations about the Association's February 15, 2024 mass e-mail to donors,

---

4 ALS United complains the Association relies on cases that predate the articulation of the two-part test in *FilmOn, supra*, 7 Cal.5th 133. *FilmOn* did not supplant all prior case law interpreting and applying section 425.16, subdivision (e)(4), and did not disapprove any of the cases cited by the Association. To the contrary, *FilmOn* approvingly cited some of those cases for the points of law for which the Association cites them. (See, e.g., *FilmOn*, at pp. 145, 146, 150, 153, citing *Terry v. Davis Community Church* (2005) 131 Cal.App.4th 1534 (*Terry*), *Wilbanks, supra*, 121 Cal.App.4th 883, and *DuCharme, supra*, 110 Cal.App.4th 107.) In any event, we use the two-part *FilmOn* test in making our decision.

the May 15, 2024 e-mail from Eugene Brandon to Ed Witt, and similar statements made at fundraisers and to healthcare providers.[5]

ALS United alleged that by these communications the Association intended to persuade donors and healthcare providers to stop dealing with ALS United by falsely stating it was a new organization with resources insufficient to provide services at the same level as had been provided before it separated from the Association and by disparaging ALS United's employees. ALS United alleged the false statements and implications caused reputational harm and financial loss. Hence, the speech of which ALS United complains "underlies or forms the basis for" at least part of each count the Association moved to strike. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062.)

The next question is whether the speech identified concerns "a public issue or an issue of public interest." (§ 425.16, subd. (e)(4); see *FilmOn, supra*, 7 Cal.5th at p. 149.) The Association argues it does, because the speech concerns fundraising for ALS and provision of services to ALS

---

[5] ALS United contends other actions for which it is suing the Association "fall entirely outside the scope of protected speech or petitioning activity." ALS United lists the Association's (1) unauthorized access to ALS United's account on the online donation platform, (2) diversion of online donations, (3) scheduling of a walk one week earlier than ALS United's walk, (4) providing false information about the walk dates to vendors, and (5) use of an ALS United's employee's photographs in promotional materials without permission. Except for the unauthorized use of the photographs, which formed the basis for the causes of action for statutory and common law misappropriation of name or likeness (counts 4 & 5) that ALS United conceded should be stricken, the other actions it has identified were not the basis for liability on the counts the Association targeted in its anti-SLAPP motion. Those actions underlie other causes of action, which are not at issue in this appeal.

patients in the San Diego area after the termination of the Association's relationship with the Chapter. And these are topics the Association claims are matters of interest to donors, service providers, and the public. ALS United counters that the speech does not implicate a matter of public concern, because the speech is part of a "private dispute" between two charitable organizations and is "fundamentally commercial" in that "it disparages a business competitor's qualifications and resources to induce customers (donors) to redirect their business (charitable contributions)." The Association has the better argument.

Speech does not fall outside the scope of the anti-SLAPP statute just because it occurs in private or is part of a dispute between private parties. Speech may concern "a public issue or an issue of public interest" (§ 425.16, subd. (e)(4)) even if it also concerns a private dispute. (*Geiser, supra*, 13 Cal.5th at p. 1253; *Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, 465.) And subdivision (e)(4) of the statute may apply to speech that occurs in private between private parties if it involves an issue of public interest. (*FilmOn, supra*, 7 Cal.5th at p. 146; *Terry, supra*, 131 Cal.App.4th at p. 1546; *Averill v. Superior Court* (1996) 42 Cal.App.4th 1170, 1174–1175.) Issues that qualify as "public" within the meaning of subdivision (e)(4) include, but are not limited to, those that are of concern to a substantial number of people or that are of concern to a limited but definable portion of the public and are part of an ongoing controversy, dispute, or discussion. (*Geiser*, at p. 1248; *FilmOn*, at p. 145; *Du Charme, supra*, 110 Cal.App.4th at p. 119.)

The statements underlying the targeted counts implicate such a public issue. In the February 15, 2024 mass e-mail ALS United alleged the Association sent to "many former donors and constituents in the San Diego

17

community" the Association sought "to clarify an unfolding situation" involving itself and ALS United. The e-mail stated the Association remained the same organization dedicated to serving ALS patients and their families in the San Diego area as it had for more than four decades, and ALS United was a new organization with limited resources that could not provide the same level of service and experience. ALS United alleged the Association made similar statements about ALS United at fundraisers and to healthcare providers. The May 15, 2024 e-mail Eugene Brandon sent Ed Witt addressed the confusion about the relationship between the two organizations created by the two scheduled ALS walks and expressed doubt about ALS United's ability to serve the ALS community. The topic of these communications, i.e., the recent separation of ALS United from the Association and their respective abilities going forward to raise funds for and to serve the local ALS community, is " 'of concern to a substantial number of people' " (*Geiser*, *supra*, 13 Cal.5th at p. 1248) or at least "to a limited, but definable portion of the public" involved in "an ongoing controversy, dispute, or discussion" (*Du Charme, supra*, 110 Cal.App.4th at p. 119)—that is, ALS patients and their families, donors, and healthcare providers in the San Diego area. We thus conclude the first part of the *FilmOn* test is satisfied. (See *Geiser*, at pp. 1253–1254 ["Only when an expressive activity, viewed in context, cannot reasonably be understood as implicating a public issue does an anti-SLAPP motion fail at *FilmOn*'s first step"].)

The second question under the *FilmOn* test is whether the statements underlying the targeted counts were "in furtherance of the [Association's] exercise of . . . the constitutional right of free speech in connection with [the] public issue" identified. (§ 425.16, subd. (e)(4); see *FilmOn, supra*, 7 Cal.5th at p. 151 ["a statement is made 'in connection with' a public issue when it

18

contributes to—that is, 'participat[es]' in or furthers—some public conversation on the issue"].)  The Association answers affirmatively and contends its statements provided information to the local ALS community about the parties' organizational split, the two walks scheduled for October 2024, where to direct donations after the split, and how support would be provided after the split.  ALS United answers negatively and contends the Association is not a disinterested informant of the public on ALS care options or nonprofit governance issues; rather, the Association is a business competitor that directed commercial communications to a narrow, specific audience for the purpose of diverting to itself donations that otherwise would have gone to ALS United.  Again, the Association has the better argument.

The second part of the *FilmOn* test does not involve "a normative evaluation of the substance of the speech.  We are not concerned with the social utility of the speech at issue, or the degree to which it propelled the conversation in any particular direction." (*FilmOn, supra*, 7 Cal.5th at p. 151.)  Also, " '[w]hether speech has a commercial or promotional aspect is not dispositive' of whether it is made in connection with an issue of public interest." (*Id.* at p. 154.)  The sinister motive ALS United attributes to the Association or the efficacy of its communications in competing with ALS United for donations are not relevant considerations.  Instead, we consider the speaker, the audience, and the purpose, timing, and location of the speech to determine "whether [the Association]—through public or private speech or conduct—participated in, or furthered, the discourse that makes an issue one of public interest." (*FilmOn, supra*, 7 Cal.5th at pp. 140, 143, 151; see *Dubac, supra*, 101 Cal.App.5th at pp. 550–551 [speaker, audience, location, timing, and purpose are relevant to decision whether statements "contribute to public discussion of public issues"].)  We now analyze those contextual factors.

19

*First, the speaker*:  The statements at issue were made by the Association, which is a national organization that funds research on ALS and advocates for and provides support to ALS patients, including those in the San Diego area.  *Second, the audience and location*:  The statements were made to ALS patients, their families, their healthcare providers, and donors in the San Diego area.  *Third, the timing*:  The statements were made after the Chapter separated from the Association, changed its name to ALS United, and scheduled a walk for one week after the Association's walk.  *Fourth, the purpose*:  The statements were made to address the confusion that the separation created for the local ALS community, to assure the community that the Association is still dedicated to providing it with a high level of service, and to advise the community that ALS United is a new entity that lacks the resources and experience needed to provide the level of service that had been provided before the separation.  Such statements by a speaker with knowledge of a developing situation to provide information to an audience when it needed the information to eliminate confusion about the situation contributed to the discussion of an issue " 'of concern to a substantial number of people.' " (*Geiser, supra*, 13 Cal.5th at p. 1248.)  By making the statements, the Association "participated in, or furthered, the discourse that makes an issue one of public interest." (*FilmOn, supra*, 7 Cal.5th at p. 151; accord, *Willis, supra*, 115 Cal.App.5th at p. 1020.)  The second part of the *FilmOn* test is also satisfied.

In summary, we conclude the Association met its burden to show the counts it moved to strike from ALS United's complaint "aris[e] from" statements "in furtherance of the exercise of . . . the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subds. (b)(1), (e)(4).)

B.    *Step two:  Probability of prevailing*

After the Association met its burden at step one, the burden shifted to ALS United to show "a probability that [it] will prevail on the claim[s]" the Association moved to strike.  (§ 425.16, subd. (b)(1); *Baral, supra*, 1 Cal.5th at p. 384.)  ALS United must "demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." (*Baral*, at p. 396.)  To do that, it may not rely solely on the allegations of its complaint and must submit admissible evidence to support the allegations.  (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940.)  The Association argues ALS United did not meet its burden because the counts targeted by the anti-SLAPP motion are legally insufficient or insufficiently supported by admissible evidence.  Except for parts of two counts, we agree with the Association.

1.    *Trade Libel (Count 1)*

In the cause of action for trade libel (count 1), ALS United alleged the Association's "false statements to potential donors [and] medical clinics that disparaged [ALS United]" caused loss of donations and disruptions in working relationships.  To prevail on this count, ALS United would have to prove the allegedly disparaging statements contain false assertions of fact.  (*Industrial Waste & Debris Box Service, Inc. v. Murphy* (2016) 4 Cal.App.5th 1135, 1156; *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1010–1011 (*ComputerXpress*).)  "[O]pinions will not support a cause of action for trade libel." (*ComputerXpress*, at pp. 1010–1011.)  The only disparaging statements alleged in the complaint for which ALS United submitted any supporting evidence were the February 15, 2024 mass e-mail from the Association to donors and constituents in the San Diego area, the May 25, 2024 e-mail from Eugene Brandon to Ed Witt, and statements Wiegand

21

suspected the Association made to a rehabilitation center and a clinic. ALS United argues that in those communications the Association did not express opinions but made provably false assertions of fact by stating or implying: (1) ALS United was a "new" organization with "limited resources"; (2) members of the ALS community were being "misled" about the level of service and experience ALS United could provide; (3) its employees "quit" and "took" the Association's contact list with them; and (4) ALS United lacked "capabilities, capacity, authenticity, [and] integrity." We are not persuaded.

Whether a statement is one of fact or one of opinion is a question of law. (*Baker v. Los Angeles Herald Examiner* (1986) 42 Cal.3d 254, 260 (*Baker*); *Gregory v. McDonnell Douglas Corp.* (1976) 17 Cal.3d 596, 601 (*Gregory*); *Chaker v. Mateo* (2012) 209 Cal.App.4th 1138, 1147.) "Statements of fact can be true or false, but an opinion—'a view, judgment or appraisal formed in the mind . . . [, a] belief stronger than impression and less strong than positive knowledge'—is the result of a mental process and not capable of proof in terms of truth or falsity." (*Hofmann Co. v. E. I. Du Pont De Nemours & Co.* (1988) 202 Cal.App.3d 390, 397 (*Hofmann Co.*).) To make the distinction, the court must decide how the average listener or reader would likely understand the statement by considering not only the language used but also the nature and full content of the statement and the knowledge and understanding of the audience to which the statement was directed. (*Baker*, at pp. 260–261; *ComputerXpress, supra*, 93 Cal.App.4th at p. 1011.) Indicators that a statement is an opinion include informality, generality, vagueness, subjectivity, cautious phrasing, and use of hyperbole. (*Gregory*, at p. 603; *ZL Technologies, Inc. v. Does 1–7* (2017) 13 Cal.App.5th 603, 624; *ComputerXpress*, at p. 1013; *Fletcher v. San Jose Mercury News* (1989) 216 Cal.App.3d 172, 191 (*Fletcher*).) Indicators that a statement is an

22

assertion of fact include formality, specificity, objectivity, seriousness of tone and content, and assurance the speaker has personal knowledge or experience of the matter. (*ZL Technologies*, at p. 624; *Bently Reserve LP v. Papaliolios* (2013) 218 Cal.App.4th 418, 428–429, 431; *Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 705.) Using these guidelines, we assess the statements on which ALS United bases its trade libel claim.

The portions of the February 15, 2024 mass-email of which ALS United complains are opinions. The statement on which ALS United primarily focuses is that it was "a new organization entirely, with very limited resources."[6] That statement was "wholly subjective" (*Fletcher, supra*, 216 Cal.App.3d at p. 191) and "too vague to be taken as fact by a reasonable reader" (*ComputerXpress, supra*, 93 Cal.App.4th at p. 1013 The Association did not, as ALS United erroneously claims, make "specific factual claims about [ALS United's] age, financial resources, and the circumstances of its formation." The only factual claim, which followed immediately in the same sentence, was that ALS United "consist[ed] of only four employees, three of whom were fundraisers with just over one year's experience working with an ALS organization." That factual assertion, which ALS United does not dispute, provided a basis for the prior assertions that ALS United was "new" and had "limited resources." "When the facts supporting an opinion are

---

[6] Based on "conversations" and "information and belief," Wiegand suspected the Association similarly told a rehabilitation center that ALS United "was a new organization without sufficient means to operate" and a clinic that ALS United was "a 'new organization.'" Those statements are nonactionable opinions for the same reasons the mass e-mail contains nonactionable opinions and will not be analyzed separately.

disclosed, 'readers are free to accept or reject the author's opinion based on their own independent evaluation of the facts.' " (*Franklin v. Dynamic Details, Inc.* (2004) 116 Cal.App.4th 375, 387 (*Franklin*).)

The full content of the mass e-mail and its context make it even clearer that the portions of which ALS United complains are opinions. The Association sent the e-mail to donors and constituents in the San Diego area "to clarify [the] unfolding situation" involving itself and ALS United. The signatories claimed they collectively had served the ALS community for more than 60 years and "reassure[d]" recipients the Association "is still here and dedicated to serving those living with ALS and their families in the Greater San Diego community." The Association cautioned recipients not to be "misled that they are going to receive the same level of service and experience with this purported organization [i.e., ALS United] as they would with [the Association]." The gist of the e-mail was that ALS United "was 'too small' to handle" the needs of the local ALS community and that the Association "was large enough to handle [them]." (*Coastal Abstract Service, Inc. v. First American Title Ins. Co.* (9th Cir. 1999) 173 F.3d 725, 731.) That is "exactly the kind of 'puffery' that does not qualify as a statement of fact capable of being proved false." (*Ibid.*; see *Pizza Hut, Inc. v. Papa John's Internat., Inc.* (5th Cir. 2000) 227 F.3d 489, 499 [defendant's claim its pizza and ingredients were "better" than those of competitor was "an exaggerated opinion of superiority," not "a 'false or misleading' statement of fact"].)

The statements in the May 15, 2024 e-mail from Eugene Brandon to Ed Witt are also not provably false assertions of fact. ALS United contends Brandon implied it committed "theft or misappropriation, a specific factual claim capable of proof or disproof," by stating its employees "quit" and "took" the Association's contact list and by questioning their "capabilities, capacity,

24

authenticity, [and] integrity." Read in isolation, the statements are susceptible to that interpretation. But we must read the statements in the context of the entire e-mail exchange between the participants to decide how the statements likely would be understood by the average reader. (*Baker, supra*, 42 Cal.3d at pp. 260–261; *ComputerXpress, supra*, 93 Cal.App.4th at p. 1011.) When we do so, we conclude they are nonactionable opinions.

The e-mail exchange was an informal conversation in which two people on a first-name basis shared their views about the two ALS walks scheduled one week apart in October 2024. Witt expressed frustration over the harm and confusion the scheduling was causing the ALS community, and he "strongly suggest[ed] there NOT be two walks." Brandon responded the Association's walk has been held "at the same place and time for 23 years" and has been its "biggest fundraising event each year." If either walk were to be canceled, Brandon suggested, it should be ALS United's walk, because its employees "quit to start their own ALS support effort," "took [the Association's] contact list and used [it] to publicize" ALS United's walk, and lacked the wherewithal "to do as good a job with a walk" as the Association could do. ALS United does not dispute that its employees "quit" by terminating their former affiliation with the Association when the Chapter refused to merge and changed its name to ALS United or that they "took" the donor list by keeping and using it to promote ALS United's walk. Those are the points Brandon conveyed to Witt in the e-mail explaining why two ALS walks were scheduled only one week apart and why he thought it made no sense for the Association to cancel its walk. Brandon was not accusing ALS United of theft or misappropriation. He was merely expressing his opinion that ALS United was not qualified to hold an ALS walk and by doing so was causing harm and confusion in the ALS community. (See *Taus v. Loftus*

25

(2007) 40 Cal.4th 683, 720 ["very doubtful" statement implying plaintiff was unfit for military service could be viewed as statement of fact rather than expression of opinion]; *Gregory, supra*, 17 Cal.3d at p. 604 [statements that "plaintiffs are not performing their duties competently and that they are not considering the best interests of the union membership" were opinions]; *Franklin, supra*, 116 Cal.App.4th at p. 389 [statement that plaintiff was "not an 'honorable company' " was "classic assertion[ ] of subjective judgment"].)

For these reasons, we conclude the trade libel count is based on statements that are mere opinions, not provably false assertions of fact. Since "opinions will not support a cause of action for trade libel" (*ComputerXpress, supra*, 93 Cal.App.4th at p. 1011), ALS United did not meet its burden to show a probability of prevailing on that count.

2. *Intentional and Negligent Interference with Prospective Economic Relations (Counts 7 & 8)*

For similar reasons, ALS United failed to meet its burden on the causes of action for intentional and negligent interference with prospective economic relations (counts 7 & 8). In those counts, ALS United alleged the Association made "false statements . . . about [ALS United] to donors and others" that disrupted relationships with those donors and others. ALS United relies on the same statements underlying the trade libel cause of action which we have already determined are opinions. Opinions, however, are legally insufficient to support a claim for interference with prospective economic relations. "Like the tort of trade libel, interference with prospective economic advantage requires false statements of fact." (*ComputerXpress, supra*, 93 Cal.App.4th at p. 1014; accord, *Charney v. Standard General, L.P.* (2017) 10 Cal.App.5th 149, 153, 157.) The trial court should have stricken counts 7 and 8.

26

3. *Unjust Enrichment (Count 6) and Unfair Competition (Count 9)*

The causes of action for unjust enrichment (count 6) and unfair competition (count 9) are so-called "mixed causes of action" in that they are based on both speech protected by the anti-SLAPP statute and other conduct not protected by the statute. (See *Baral, supra*, 1 Cal.5th at p. 382.) In the unjust enrichment count, ALS United alleged the Association "wrongfully deprived [ALS United] of [its] interest in revenue/donations by way of trade libel and/or other wrongful conduct causing a loss of revenue/donations." In the unfair competition count, ALS United alleged it lost money or property because of the Association's unfair business practices, including "trade libel, misappropriation, conversion, interference with economic relations, various types of fraud, including fraudulent inducement, breach of contract, and breach of the implied covenant." When a single count alleges multiple acts as a basis for relief, the anti-SLAPP motion reaches acts that constitute protected activity but not acts that are unprotected. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1010 (*Bonni*); *Baral*, at p. 382.) Allegations of protected activity, but not those of unprotected activity, are stricken unless the plaintiff shows a probability of prevailing on the allegations of protected activity. (*Bonni*, at p. 1012; *Baral*, at p. 396; *Newport Harbor Offices and Marina, LLC v. Morris Cerullo World Evangelism* (2018) 23 Cal.App.5th 28, 48, 50–51.)

Under *Baral, supra*, 1 Cal.5th 376, and the other cases cited in the preceding paragraph, ALS United's causes of action for unjust enrichment and unfair competition are subject to the Association's special motion to strike only to the extent they are based on the counts for trade libel, misappropriation of name or likeness, or interference with prospective economic relations, which are counts that ALS United conceded or we have

27

determined should have been stricken. To the extent the causes of action for unjust enrichment and unfair competition are based on conversion, fraud, breach of contract, or other wrongful conduct alleged in the complaint, they do not arise from protected activity and are not subject to being stricken under the anti-SLAPP statute. The trial court erred by denying the special motion to strike to the extent the causes of action for unjust enrichment and unfair competition are based on the causes of action for trade libel, misappropriation of name or likeness, or interference with prospective economic relations. But it correctly denied the motion to the extent the causes of action for unjust enrichment and unfair competition are based on other wrongful conduct alleged in the complaint.

We reject the Association's assertion that "[e]ven if some allegations supporting a cause of action are not protected activity, the entire cause of action is subject to [an anti-SLAPP motion] 'if at least one of the underlying acts is protected conduct, unless the allegations of protected conduct are merely incidental to the unprotected activity.'" That assertion, which is based on a case that predates *Baral, supra*, 1 Cal.5th 376, is not an accurate statement of current law. Under *Baral*, only the portion of a mixed cause of action that arises from protected activity is subject to being stricken under the anti-SLAPP statute. (*Id.* at p. 382.)

We also reject the Association's argument that "[t]he trial court erred in refusing to strike [ALS United's] unjust enrichment claim, which fails as a matter of law." The Association correctly points out this court has held there is no cause of action for unjust enrichment. (*Levine v. Blue Shield of California* (2008) 189 Cal.App.4th 1117, 1138; *Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1370.) That holding was made in appeals that challenged rulings on demurrers, which may eliminate a separately pleaded

28

count that "does not state facts sufficient to constitute a cause of action." (§ 430.10, subd. (f).)  As we have explained, however, an anti-SLAPP motion may eliminate a separately pled count only to the extent it arises from speech or petitioning activity protected by the anti-SLAPP statute.  (§ 425.16, subd. (b)(1); *Baral, supra*, 1 Cal.5th at p. 382.)  To the extent ALS United's cause of action for unjust enrichment arises from "other wrongful conduct causing a loss of revenue/donations," it is not subject to an anti-SLAPP motion.

C.  *Conclusion*

In summary, we conclude the causes of action for trade libel (count 1) intentional interference with prospective economic relations (count 7), and negligent interference with prospective economic relations (count 8) arise entirely from opinions that are not actionable as a matter of law.  We further conclude the causes of action for unjust enrichment (count 6) and unfair competition (count 9) arise partially from opinions that are not actionable as a matter of law.  ALS United therefore failed to meet its burden to show the causes of action are "legally sufficient" to the extent they arise from opinions, and the trial court erred by not striking them entirely or in part.  (*Baral, supra*, 1 Cal.5th at pp. 384, 396.)  Our conclusions make it unnecessary for us to consider the parties' arguments on the admissibility and sufficiency of the evidence to support the causes of action.

DISPOSITION

The order granting in part and denying in part the special motion to strike is affirmed in part and reversed in part.  The matter is remanded to the trial court with directions to vacate its order and to enter a new order: (1) granting the motion as to the causes of action for trade libel (count 1), statutory and common law misappropriation of name or likeness (counts 4 &

29

5), and intentional and negligent interference with prospective economic relations (counts 7 & 8) by striking those causes of action in their entirety from the complaint; and (2) granting the motion as to the causes of action for unjust enrichment (count 6) and unfair competition (count 9) by striking from those causes of action the references to trade libel, misappropriation of name or likeness, or interference with economic relations in paragraphs 168 and 203 of the complaint and otherwise denying the motion as to those causes of action. Appellant is entitled to costs on appeal.

DO, J.

WE CONCUR:

DATO, Acting P. J.

CASTILLO, J.

30